STATE OF CONNECTICUT *v.* JONATHAN MILLER
(10071)

DUPONT, C. J., DALY, O'CONNELL, NORCOTT, FOTI, LAVERY, LANDAU, HEIMAN and FREEDMAN, Js.

Argued June 16—decision released September 22, 1992

*Ronald T. Murphy,* special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Edward Narus,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant, Jonathan Miller, appeals from a judgment of conviction, rendered after a conditional plea of nolo contendere; see General Statutes § 54-94a;[1] to criminal possession of a pistol, revolver or electronic defense weapon in violation of General Statutes § 53a-217. He claims that the trial court improperly denied his motion to suppress a revolver that the police seized from the trunk of his car. We reverse the trial court's judgment.

The facts necessary to resolve this appeal are as follows. On March 17, 1990, at about 10 p.m., Elizer Negron, his six year old son and his eighteen year old brother were seated in Elizer's automobile, which was parked in the fire lane of Waldbaum's Foodmart on New Britain Avenue in West Hartford, while they waited to pick up Elizer's wife. As they sat and waited, three men walked past the vehicle from the rear. As the men walked past the car on their way into the supermarket, one of them said to Elizer, "What's up?" Shortly thereafter, as the three men ran out of the supermarket, both Elizer and his brother heard a scream, and then heard someone from inside the store yell that there had been a robbery.

The three men who had exited the supermarket raced across the parking lot toward New Britain Avenue. Two of them, including the man who said "What's up," ran toward the Piper Brook restaurant and got into a car, while the third ran toward a neighboring Dunkin

---

[1] General Statutes § 54-94a provides in pertinent part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure . . . the defendant after the imposition of sentence may file an appeal . . . . The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . ."

Donuts shop. The man who spoke to Elizer drove the car to the third man, picked him up, and sped east on New Britain Avenue.

Elizer followed the vehicle in an attempt to ascertain its make and license plate number. Both he and his brother noted that the vehicle was a light grey Chrysler bearing the Connecticut license plate "428GFK." Upon obtaining the getaway car's make and license plate number, they returned to Waldbaum's and reported this information to a West Hartford police officer. A check of the vehicle's registration revealed that it was registered to Jonathan Miller of 41 Arlington Street in Hartford. Police officers from both West Hartford and Hartford went to Arlington Street in Hartford to apprehend Miller. When the officers arrived, neither the defendant nor the car was present.

West Hartford detective Jay St. Jacques parked his unmarked car at one end of Arlington Street and two other West Hartford police officers parked at the other end of the block in another unmarked car. All other police vehicles then left the area at St. Jacques' request.

About forty minutes after the robbery, St. Jacques observed a light grey Chrysler traveling down Arlington Street. St. Jacques followed the vehicle until it stopped on the side of Arlington Street. As the driver exited the car, St. Jacques pulled up from behind, trained his high beams on the car's driver, drew his weapon and identified himself as a police officer. The driver was the defendant.

As St. Jacques awaited back up assistance, the defendant made a comment about not hanging around, made a quick move back into his car and attempted to start it. As he did so, additional West Hartford police arrived and removed the defendant from the vehicle, patted him down for weapons, handcuffed him and placed him in the backseat of a West Hartford police

cruiser. The pat down revealed no incriminating evidence. St. Jacques then approached the defendant, who was handcuffed and seated in the cruiser, removed the defendant's car keys from his pocket, unlocked the defendant's car, and searched its passenger compartment. Again, St. Jacques discovered no incriminating evidence.

The West Hartford police then contacted Elizer Negron and his brother to have them identify the defendant. Because the Negrons also lived on Arlington Street and did not want the defendant to know their identities or address, the police transported them from their Arlington Street residence to the parking lot of the Batchelder School in Hartford, where they were met by other West Hartford police officers driving the cruiser containing the handcuffed defendant. At the school parking lot, the officers removed the defendant from the vehicle and shined a spotlight on him. Both Negron brothers immediately identified the defendant as the person who had walked by their car at Waldbaum's Foodmart and said, "What's up."

The defendant was transported to the West Hartford police station, where he was charged with robbery. His car was towed from Arlington Street to the West Hartford police department garage, where it was secured and searched without a warrant. The search uncovered a .357 Smith and Wesson revolver in the car's trunk.

The defendant was charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4). He filed a pretrial motion to suppress tangible evidence, claiming that the search of the vehicle at the police garage violated both the United States and the Connecticut constitutions. The trial court denied the motion, and the defendant was acquitted of

both charges after a jury trial. Subsequent to that verdict, the state charged the defendant with criminal possession of a pistol, revolver or electronic defense weapon in violation of General Statutes § 53a-217. The defendant entered a plea of nolo contendere to this charge, conditional on his right to appeal the trial court's denial of his motion to suppress physical evidence. This appeal followed.

In this appeal, the defendant argues that the trial court improperly rejected each of the following grounds offered in support of his motion to suppress: (1) the West Hartford police acted outside their territorial jurisdiction when they performed an investigation, stake out, Terry[2] stop and warrantless seizure of the defendant's car in Hartford; (2) the defendant's arrest was not supported by probable cause; and (3) the warrantless search of the defendant's car at the police garage was not authorized by any exception to the warrant requirement as commanded by the fourth amendment to the United States constitution and by article first, § 7, of the Connecticut constitution.

I

The defendant first claims that because the gun seized from his car was the product of an extraterritorial and, hence, illegal investigation, stakeout, Terry stop and warrantless seizure of his car in Hartford by the West Hartford police, the trial court improperly denied his motion to suppress. We disagree.

The defendant's theory that municipal police officers are powerless to conduct the aforementioned activities outside of their precincts is rooted in article tenth, § 1, of the Connecticut constitution,[3] which provides that

---

[2] See Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[3] Article tenth, § 1, of the Connecticut constitution provides in pertinent part: "The general assembly shall by general law delegate such legislative

municipalities have only those powers that the state grants them. See *City Counsel* v. *Hall,* 180 Conn. 243, 248, 429 A.2d 481 (1980). The defendant further asserts that an enumeration of powers in a statute excludes those not enumerated, and that a delegation of power to municipal authorities is to be narrowly construed. See *Simons* v. *Canty,* 195 Conn. 524, 529–30, 488 A.2d 1267 (1985). He points out that General Statutes § 7-148 (c) provides: "Any municipality shall have the power to . . . (4) . . . (A) Provide for police protection, regulate and prescribe the duties of the persons providing police protection with respect to criminal matters *within the limits of the municipality . . . .*" (Emphasis added.) He argues that this statute prohibits municipalities from authorizing their police departments to act outside the municipalities' territorial boundaries. He also notes that General Statutes § 7-277a allows a municipality, *through its chief executive officer*, to request police assistance from another municipality. This statute, he contends, indicates that, absent a request from the host city's chief executive officer, police may not operate outside their respective precincts. Finally, he argues that General Statutes § 54-1f, the only statute that authorizes extraterritorial police action, permits only extraterritorial *arrests*. Thus, he concludes, municipal police officers generally have no authority to conduct an investigation, stakeout, *Terry* stop or seizure of property outside their precincts.

We first address the propriety of the West Hartford police investigation and warrantless seizure of the defendant's car in Hartford. Our resolution of this issue is controlled by our Supreme Court's decision in *State* v. *Kuskowski,* 200 Conn. 82, 510 A.2d 172 (1986). In

authority as from time to time it deems appropriate to towns, cities and boroughs relative to the powers, organization, and form of government of such political subdivisions. . . ."

*State* v. *Kuskowski,* supra, officer Maureen Doherty of the Brookfield police department was on routine duty near Lake Lillinonah when she observed a car with its interior light on parked in a boat launch area across the lake in the neighboring town of Bridgewater. Id., 84. Doherty drove to the car and observed that the defendant, Russell Kuskowski, was unconscious in the driver's seat, with a burning propane torch in his lap. Id. Doherty roused the defendant, shut off the torch, and noticed drug paraphernalia on the console and driver's seat. Id. After other officers from the Brookfield police department arrived, a full search of the trunk of the defendant's car was conducted, which resulted in the seizure of two thermos bottles filled with cocaine. Id. The defendant then was arrested. Id.

Kuskowski was convicted at trial of possession of cocaine and possession of cocaine with intent to sell. Id., 83. On appeal, he argued that the trial court improperly failed to grant his motion to suppress the fruits of the warrantless search of his car because the Brookfield police officers acted outside of their jurisdiction. Id., 84–85. The court described the defendant's argument as "based on the faulty premise that Doherty violated the law when she left her jurisdiction and entered the town of Bridgewater to investigate the defendant's vehicle." Id. "Doherty," the court reasoned, "no less than any other citizen, had a right to stand beside the defendant's car and peer in." Id., 85. When she saw the torch, she had every reason to rouse the defendant, and in doing so, she observed cocaine and paraphernalia in plain view. Id. These observations, the court concluded, gave her probable cause not only to seize the contraband on the console, but also to search the trunk. Because we discern no material variance between either the facts or legal arguments in *State* v. *Kuskowski,* supra, and those in this case, we

are constrained to reject the defendant's claim that the West Hartford police's investigation and seizure of the defendant's car in Hartford was illegal.

We also reject the defendant's claim that the West Hartford police conducted an illegal extraterritorial stop and frisk of his person, also known as a *Terry* stop, that required the trial court to grant his motion to suppress. "The disposition of this issue necessarily turns on the application of the 'fruit of the poisonous tree' doctrine, which requires courts to exclude evidence that is the product or 'fruit' of police conduct in violation of the fourth amendment. *Wong Sun* v. *United States,* 371 U.S. 471, 484–88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Under *Wong Sun,* the question to be resolved concerning the admissibility of derivative evidence is whether, granting establishment of the primary illegality, the evidence to which the objection is made has been ' "come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' Id., 488, quoting J. Maguire, Evidence of Guilt (1959) p. 221; *State* v. *Villafane,* 171 Conn. 644, 655, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part, *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984)." *State* v. *Ostroski,* 201 Conn. 534, 545, 518 A.2d 915 (1986).

Here, even assuming, without deciding, that the *Terry* stop of the defendant was illegal, we cannot agree that this rendered the gun inadmissible. The seizure of the defendant's gun was not the fruit of the *Terry* stop of the defendant's person but of the valid seizure of the defendant's car upon probable cause to believe that it was the getaway car in an armed robbery. See *State* v. *Graham,* 200 Conn. 9, 20, 509 A.2d

493 (1986). Because the seizure of the gun did not owe its origin in material part to the *Terry* stop, the *Terry* stop cannot provide a basis for excluding the gun from evidence.

## II

The defendant argues next that the gun seized from the trunk of his car was the fruit of his illegal arrest. We disagree.

The defendant contends that his detention on Arlington Street was not a *Terry* stop, as the trial court found it was, but was instead an arrest. He argues further that this arrest was not supported by probable cause, and, therefore, that the trial court should have suppressed the gun, which he claims was the fruit of the unlawful arrest. Whether the detention of the defendant was a *Terry* stop or an arrest is immaterial to whether the trial court should have excluded the gun from evidence. For the reasons we noted earlier, we need not decide either the character or the legality of the defendant's detention on Arlington Street because the seizure of the gun was not the fruit of that detention. See *State* v. *Graham,* supra.

The defendant's claim is without merit.

## III

The defendant next asserts that the warrantless search of his motor vehicle at the West Hartford police garage violated both the fourth amendment to the United States constitution[4] and article first, § 7, of the

[4] The fourth amendment to the United States constitution, which was made applicable to the states in *Wolf* v. *Colorado,* 338 U.S. 25, 27–28, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949), provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Connecticut constitution.[5] We agree that the search violated article first, § 7, of the Connecticut constitution.

It is "a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' " (Emphasis in original.) *Mincey* v. *Arizona,* 437 U.S. 385, 390, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), quoting *Katz* v. *United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). In this case, we decide whether this axiom, the cornerstone of so much of our search and seizure jurisprudence, must be adhered to as an essential component of our state constitution's Declaration of Rights.

In order to appreciate fully this cardinal principle, it is appropriate to restate the basis for the warrant requirement and the reasons why the limitations on the automobile exception articulated in *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), particularly the exigent circumstances requirement, represent a fair accommodation between the basic rule requiring prior judicial approval of searches and the legitimate needs of law enforcement officials. Because the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution were enacted in response to the same historical experience and protect the same fundamental values, the early history of the provisions may be analyzed together. See *State* v. *Marsala,* 216 Conn. 150, 167–68 n.12, 579 A.2d 58 (1990).

"The Fourth Amendment is a restraint on Executive power. The Amendment constitutes the Framers'

---

[5] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

direct constitutional response to the unreasonable law enforcement practices employed by agents of the British Crown. See *Weeks* v. *United States,* 232 U.S. 383, 389–91, 34 S. Ct. 341, 58 L. Ed. 652 (1914); *Boyd* v. *United States,* 116 U.S. 616, 624–25, 6 S. Ct. 524, 29 L. Ed. 746 (1886); 1 W. LaFave, Search and Seizure 3-5 (2d ed. 1987)." *California* v. *Acevedo,*     U.S.     , 111 S. Ct. 1982, 1994, 114 L. Ed. 2d 619 (1991) (Stevens, J., dissenting). Specifically, "constitutional provisions such as the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution were enacted to ensure that the newly formed federal or state governments 'could not employ the two devices used by the British Crown that they believed jeopardized the liberty of every citizen: the general warrant and the writ of assistance.' P. Stewart, 'The Road to *Mapp* v. *Ohio* and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search-and-Seizure Cases,' 83 Colum. L. Rev. 1365, 1369 (1983)." *State* v. *Marsala,* supra, 167 n.12.

The Massachusetts experience is, from a historical viewpoint, helpful in understanding Connecticut's search and seizure provision because the Connecticut colony was, both culturally and politically, an outgrowth of the Massachusetts colony and was settled under a commission from the Massachusetts court. C. Collier, "The Connecticut Declaration of Rights Before the Constitution of 1818: A Victim of Revolutionary Redefinition," 15 Conn. L. Rev. 87, 90 n.8 (1982).[6] That commission embodied the political principles that formed the basis for the Fundamental Orders of 1639; id; a precursor of the Connecticut constitution. Writs of assistance, warrants authorizing unlimited discretion to conduct customs searches, were most common in Massachusetts, and were loathed by the Massachusetts colonists, who realized that the writs "no more con-

---

[6] See footnote 10, infra.

trolled official discretion than would a statute that simply permitted warrantless searches. . . . Clearly the colonists would not have been satisfied by an English statute that withdrew authority to issue writs of assistance but permitted customs officials to search without any warrant at all." J. Grano, "Rethinking the Fourth Amendment Warrant Requirement," 19 Amer. Crim. L. Rev. 603, 619 (1982). It is from this historical experience that Connecticut's expressed preference for a warrant evolved, and it is to this same experience that we look to determine whether a departure from the warrant requirement is justified.

This history, however, provides only part of the justification for the warrant requirement. "The requirement also reflects the sound policy judgment that, absent exceptional circumstances, the decision to invade the privacy of an individual's personal effects should be made by a neutral magistrate rather than an agent of the Executive. In his opinion for the [United States Supreme] Court in *Johnson* v. *United States,* [333 U.S. 10, 13–14, 68 S. Ct. 367, 92 L. Ed. 2d 436 (1948)], Justice Jackson explained: 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' " *California* v. *Acevedo,* supra, 1994–95 (Stevens, J., dissenting).

The warrant requirement also "is intended to eliminate altogether searches not based on probable cause. The premise here is that *any* intrusion in the way of a search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity." (Emphasis in original.) *Coolidge* v. *New*

*Hampshire,* 403 U.S. 443, 467, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). This protection is particularly important where searches are concerned. Unlike a seizure, which involves state interference with a person's possessory interest, a search constitutes state interference with a person's privacy interest. *Horton* v. *California,* 496 U.S. 128, 133, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). Although an improper seizure can be undone by returning the seized property, privacy, once invaded, cannot be restored. Thus, the invasion of privacy occasioned by an illegal search cannot be remedied satisfactorily, even if a judge subsequently determines that the search was not supported by probable cause. See J. Grano, "Rethinking the Fourth Amendment Warrant Requirement," supra, 648.

With the foregoing in mind, both our state courts and the federal courts repeatedly have stated that warrantless searches are per se unreasonable "subject only to a few specifically established and well-delineated exceptions." *Katz* v. *United States,* supra; *State* v. *Lewis,* 220 Conn. 602, 609, 600 A.2d 1330 (1991). The automobile exception to the warrant requirement first was recognized by the United States Supreme Court in *Carroll* v. *United States,* supra. There, federal agents had probable cause to believe that the defendant's car was carrying illegal liquor. The Supreme Court upheld the warrantless roadside search of the car's passenger compartment, and the automobile exception was born. The *Carroll* court offered two rationales for the exception: (1) exigency, because a car inherently is mobile, and (2) the diminished expectation of privacy that people have in the contents of their automobiles. By declaring that exigency is one of the two primary justifications for the automobile search, the court reaffirmed the oft stated principle that a search warrant is required except where it is excused by some exigency.

Exigency remained a necessary condition to any application of the automobile exception until 1970, when the United States Supreme Court in *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970), cut the automobile exception loose from its jurisprudential moorings. *Chambers* v. *Maroney, supra,* involved a search of the defendant's car at a police garage while the defendant was in police custody. The court dismissed the petitioner's argument that because exigent circumstances disappeared when the car was impounded, the automobile exception should not apply: "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." Id., 52. Thus, the search of the trunk of the defendant's automobile in this case did not violate the fourth amendment to the federal constitution as it was interpreted by the United States Supreme Court in *Chambers* v. *Maroney, supra.* See *State* v. *Johnson,* 183 Conn. 148, 438 A.2d 851 (1981); *State* v. *Schoenbneelt,* 171 Conn. 119, 368 A.2d 117 (1976); *State* v. *Quinones,* 21 Conn. App. 506, 574 A.2d 1308 (1990).

Our analysis does not end here, however, because the defendant claims also that the search violated article first, § 7, of the Connecticut constitution. It is now beyond dispute that "in some instances . . . the protections afforded to the citizens of this state by our own constitution go beyond those provided by the federal constitution, as that document has been interpreted by the United States Supreme Court. *State* v. *Dukes,* 209 Conn. 98, 112, 547 A.2d 10 (1988); *State* v. *Stoddard,* 206 Conn. 157, 166, 537 A.2d 446 (1988); *State* v. *Kimbro,* 197 Conn. 219, 235–36, 496 A.2d 498 (1985). . . . '[I]n the area of fundamental civil liberties—which

includes all protections of the declaration of rights contained in article first of the Connecticut constitution—we sit . . . subject only to the qualification that our interpretations may [neither] restrict the guarantees accorded the national citizenry under the federal charter [nor conflict with the pronouncements of our state Supreme Court]. In such constitutional adjudication, our first referent is Connecticut law and the full panoply of rights Connecticut residents have come to expect as their due. Accordingly, decisions of the United States Supreme Court defining fundamental rights are persuasive authority to be afforded respectful consideration, but they are to be followed by Connecticut courts only when they provide no less individual protection than is guaranteed by Connecticut law.' *Horton* v. *Meskill,* 172 Conn 615, 641–42, 376 A.2d 359 (1977)." *State* v. *Marsala,* supra, 160.

Although our state constitutional decisional law is in its infancy, some distinct, principled jurisprudential theories are emerging for determining when it is appropriate to invoke our state constitution and to afford greater protections to Connecticut residents than those supplied by the United States Supreme Court's interpretations of consonant provisions of the federal constitution. Although the basis for departure is perhaps most obvious where either the text or the historical setting of the Connecticut constitutional provision at issue varies materially from that of its federal counterpart, our courts have in some instances interpreted our state constitutional provisions more broadly than their federal counterparts even where, as is the case with the search and seizure provisions of the two documents, there is no material difference between either the texts or the historical backgrounds of the two provisions. See, e.g., *State* v. *Marsala,* supra. This has been particularly so where the United States Supreme Court "has created exceptions to or deviated from rules previ-

ously enunciated by it"; *State* v. *DeFusco,* 27 Conn. App. 248, 256, 606 A.2d 1, cert. granted, 222 Conn. 910, 608 A.2d 693 (1992); that are incompatible with the fundamental precepts underlying article first, § 7.

In *State* v. *Marsala,* supra, our Supreme Court decided that the so called good faith exception to the exclusionary rule, recognized by the United States Supreme Court in *United States* v. *Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), was inimical to the preference of article first, § 7, for the integrity of the warrant issuing process. In *State* v. *Geisler,* 222 Conn. 672, 686–87, 610 A.2d 1225 (1992), our Supreme Court held that the remedial purposes of our state constitution's exclusionary rule would not be served adequately by the rule set forth in *New York* v. *Harris,* 495 U.S. 14, 110 S. Ct. 1640, 109 L. Ed. 2d 13 (1990), under which courts are free, without resort to an attenuation-of-taint analysis, to admit a postarrest statement of a defendant who, although illegally subjected to a warrantless arrest inside of his home, gave a postarrest statement outside of his home. The court declared that the central purpose of Connecticut's exclusionary rule, the deterrence of police misconduct, would not be furthered adequately by the rule articulated in *New York* v. *Harris,* supra. Thus, the court concluded, article first, § 7, cannot coexist with such a rule.

Our Supreme Court's decisions in *State* v. *Geisler,* supra, and *State* v. *Marsala,* supra, did not rest on any textual or historical distinction between the fourth amendment and article first, § 7. Indeed, in each case the court noted that these provisions contain similar language and share historical roots. *State* v. *Geisler,* supra, 686, 688–89; *State* v. *Marsala,* supra, 159, 167 n.12; see also *State* v. *Barton,* 219 Conn. 529, 540, 594 A.2d 917 (1991). In each case, the court analyzed the shared purpose of the federal and state search and sei-

zure provisions in light of modern practical considerations and concluded that because the United States Supreme Court's interpretation of the fourth amendment did not sufficiently promote the constitutional values at issue, the court was obliged to construe our state search and seizure clause more broadly than the United States Supreme Court had construed its federal counterpart. These decisions reflect an acknowledgement that, although the United States Supreme Court's interpretations of federal constitutional provisions are binding on our courts, we have an independent duty to construe our state constitution in a manner that is consistent with that document's history, its text and the values that its framers intended it to protect. *State* v. *Dukes,* supra, 112–13; see also *State* v. *Barton,* supra, 545–46.

This analysis also was employed by our Supreme Court in *State* v. *Barton,* supra, in which the court abandoned its previous departure from the United States Supreme Court's methodology for undertaking a probable cause review of a warrant affidavit. See *State* v. *Kimbro,* supra, 235, overruled, *State* v. *Barton,* supra. The court's decision in *Barton* was not based on a conclusion that the court in *Kimbro* had erroneously determined that the history or text of article first, § 7, differed from that of the fourth amendment in some material respect. Rather, it carefully reexamined the shared history and purpose of the state and federal search and seizure provisions and concluded that the approach adopted by the United States Supreme Court in *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), was indeed "consistent with the history and policy concerns of analogous Connecticut constitutional provisions . . . ." *State* v. *Barton,* supra, 546.

In addition to this general theory of state constitutional search and seizure jurisprudence, recent cases

have highlighted the particular importance that article first, § 7, attaches to the warrant requirement and the adherence to judicial process. Clearly, the driving principle behind our Supreme Court's decision in *State* v. *Marsala,* supra, 168–69, to reject the good faith exception to the exclusionary rule was "the extent to which the [exclusionary] rule helps preserve the integrity of the warrant issuing process as a whole." Similarly, our Supreme Court, in reexamining the methodology for conducting a probable cause review of a warrant affidavit in *State* v. *Barton,* supra, 540–41, stressed the importance under our state constitution of the "interposition of a neutral and detached magistrate who must judge independently the sufficiency of an affidavit supporting an application for a search warrant" as "[o]ne of the principal means by which the warrant requirement protects the privacy and property of the individual . . . ."

With our state constitution's manifest preference for a warrant in mind, we turn to an analysis of the contours of the automobile exception to that requirement. Our Supreme Court has recognized that article first, § 7, of the Connecticut constitution contains an automobile exception to its warrant requirement, under which the police may search the passenger compartment of an automobile, including closed containers therein, on the roadside, upon probable cause to believe that they contain the fruits or instrumentalities of a crime. *State* v. *Dukes,* supra. This rule is justified by exigent circumstances and the diminished expectation of privacy in the passenger compartment of an automobile—the twin justifications for the well established automobile exception since its genesis in *Carroll* v. *United States,* supra,—and thus comports with our state constitutional tradition that tolerates only those departures from judicial process that are narrowly tailored to conform to the exigencies that justify them.

"Where officers have probable cause to search a vehicle on a public way, a . . . limited exception to the warrant requirement is reasonable because 'the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' *Carroll* v. *United States*, [supra, 153]. Because the officers might be deprived of valuable evidence if required to obtain a warrant before effecting any search or seizure . . . they should be permitted to take the steps necessary to preserve evidence and to make a search possible. Cf. ALI, Model Code of Pre-Arraignment Procedure § 6.03 (Tent. Draft No. 3, 1970)." *Chambers* v. *Maroney*, supra, 62 (Harlan, J., dissenting). Where the police want to conduct a roadside search of an automobile, the car's inherent mobility provides the requisite exigent circumstances that make securing a warrant prior to search impracticable.

The circumstances that may cause the police to be deprived of valuable evidence in the event that they apply for a warrant before conducting a roadside search are legion. They include the presence of an alerted criminal bent on flight, the fleeting opportunity to search a vehicle on an open highway, the presence of contraband, stolen goods or weapons, the presence of confederates waiting to move the evidence and the inconvenience of a special police detail to guard the immobilized automobile. *Coolidge* v. *New Hampshire*, supra, 462. A requirement that the police seize and hold all vehicles that they want to search until a warrant is obtained would require police departments either to "have available the people and equipment necessary to transport impounded automobiles to some central location"; *Arkansas* v. *Sanders*, 442 U.S. 753, 765 n.14, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979); or to post a guard at the roadside with the automobile until warrants could be secured. *Cady* v. *Dombrowski*, 413 U.S. 433, 447, 93 S. Ct. 2523, 37 L. Ed 2d 706 (1973).

Because these often are not practicable alternatives; id.; exigent circumstances that justify the warrantless search of an automobile on a public roadside may exist, even where, as in *State* v. *Dukes,* supra, the car's driver is in custody at the time the automobile is searched. Finally, we recognize that the officers' reasonable fear for their own safety, the interference with the search by third parties or the need to obtain evidence quickly that might aid in apprehending a fleeing culprit all may contribute to the exigent circumstances that justify a warrantless roadside search of an automobile. See 3 W. LaFave, Search and Seizure § 7.2 (a).

Our courts have not, however, considered whether the police may, consistent with article first, § 7, conduct a warrantless search of a securely impounded automobile.[7] If we take seriously our judicial preference for a warrant, we cannot excuse the failure to obtain a warrant where the police are not in danger, where the search is not a proper inventory search, and where exigent circumstances are entirely absent. Once a car is impounded in a secure area, the exigencies inherent

---

[7] In *State* v. *Schoenbneelt,* 171 Conn. 119, 368 A.2d 117 (1976), the defendant challenged the warrantless search of his automobile at the police station on both federal and state constitutional grounds. Our Supreme Court, relying on *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970), upheld the search. Although the defendant presented a claim under both the federal and state constitutions, the court appears to have decided the issue on only federal constitutional grounds. There is no discussion of the Connecticut constitution and all of the cases cited in support of the court's holding are United States Supreme Court cases. Further, the court refrained from stating, as it had in the past, that the federal and state provisions at issue afford identical protections.

We do not construe our Supreme Court's silence on the state constitutional issue in *Schoenbneelt* as a decision on the merits. In that case, the court undertook absolutely no state constitutional (or Connecticut case law) analysis. Further, *Schoenbneelt* was decided in 1976, well before our courts began to declare that article first, § 7, has an independent and vital life of its own. See, e.g., *State* v. *Marsala,* 216 Conn. 150, 579 A.2d 58 (1990); *State* v. *Dukes,* 209 Conn. 98, 547 A.2d 10 (1988); *State* v. *Geisler,* 25 Conn. App. 282, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992).

in a roadside automobile search normally vanish. In such cases, there ordinarily will be no excuse for failing to seek out the authorization of a neutral and detached magistrate. Justice Harlan's dissent in *Chambers* v. *Maroney,* supra, is particularly instructive with regard to this point, and is worthy of extensive quotation here: "In sustaining the search of the [impounded] automobile I believe the Court ignores the framework of our past decisions circumscribing the scope of permissible search without a warrant. The Court has long read the Fourth Amendment's proscription of 'unreasonable' searches as imposing a general principle that a search without a warrant is not justified by the mere knowledge by the searching officers of facts showing probable cause. The 'general requirement that a search warrant be obtained' is basic to the Amendment's protection of privacy, and ' "the burden is on those seeking [an] exemption . . . to show the need for it." ' E.g., *Chimel* v. *California,* 395 U.S. 752, 762, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *Katz* v. *United States,* [supra, 356–58]; *Warden* v. *Hayden,* 387 U.S. 294, 299, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967); *Preston* v. *United States,* 376 U.S. 364, 367, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964); *United States* v. *Jeffers,* 342 U.S. 48, 51, 72 S. Ct. 93, 96 L. Ed. 59 (1951); *McDonald* v. *United States,* 335 U.S. 451, 455–56, 69 S. Ct. 191, 93 L. Ed. 153 (1948); *Agnello* v. *United States,* 269 U.S. 20, 33, 46 S. Ct. 4, 70 L. Ed. 145 (1925).

"Fidelity to this established principle requires that, where exceptions are made to accommodate the exigencies of particular situations, those exceptions be no broader than necessitated by the circumstances presented. For example, the Court has recognized that an arrest creates an emergency situation justifying a warrantless search of the arrestee's person and of 'the area from within which he might gain possession of a weapon or destructible evidence'; however, because the exigency giving rise to this exception extends only that

far, the search may go no further. *Chimel* v. *California,* [supra, 763]; *Trupiano* v. *United States,* 334 U.S. 699, 705, 708, 68 S. Ct. 1229, 92 L. Ed. 1663 (1948). Similarly we held in *Terry* v. *Ohio,* [supra], that a warrantless search in a 'stop and frisk' situation must 'be strictly circumscribed by the exigencies which justify its initiation.' Id., at 26. Any intrusion beyond what is necessary for the personal safety of the officer or others nearby is forbidden. . . .

"The Court holds that [the circumstances under which the police may forgo obtaining a warrant] include making a warrantless search of the entire vehicle on the highway—a conclusion reached by the Court in *Carroll* without discussion—and indeed appears to go further and to condone the removal of the car to the police station for a warrantless search there at the convenience of the police. I cannot agree that this result is consistent with our insistence in other areas that departures from the warrant requirement strictly conform to the exigency presented." *Chambers* v. *Maroney,* supra, 61–63 (Harlan, J., dissenting).

Justice Harlan's position regarding warrantless searches of impounded automobiles is consistent with the principles underlying the warrant requirement of article first, § 7. We take our commitment to the judicial process seriously, and cannot tolerate a warrantless search of an impounded automobile, where exigent circumstances, the principal circumstance that justifies the automobile exception in the first instance, have evaporated. To do so would constitute an abdication of our "constitutional duty to construe article first, § 7, in a way that adequately protects the rights of individuals in Connecticut and also [our] supervisory responsibility, as [an] overseer of the judiciary in Connecticut . . . ." *State* v. *Barton,* supra, 545.[8]

---

[8] In light of our conclusion that exigent circumstances are a necessary condition to any application of the automobile exception to the warrant requirement, we need not consider whether the defendant was entitled to

Our conclusion is entirely consistent with the decisions of our Supreme Court.[9] As we noted earlier, *State v. Dukes,* supra, involved a roadside automobile search. Where the police conduct a roadside search of an automobile, exigent circumstances may be generated by the impracticability of obtaining a warrant, by the danger to the police from the accused or from third parties and

only a diminished expectation of privacy in the trunk of his car. We point out, however, our reservations concerning the dissenters' seemingly unquestioning acceptance of the principle, embraced by the United States Supreme Court in *California* v. *Acevedo,* U.S. , 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991), that a person enjoys a diminished expectation of privacy not only in the passenger compartment of his automobile, but also in its trunk.

The following passage from *State* v. *Bennett,* 301 Or. 299, 313–14, 721 P.2d 1375 (1986) (Lent, J., dissenting), is instructive regarding this issue: "Underlying the federal decisions on vehicle searches is an asserted 'reduced expectation of privacy' one has in his automobile. Although this may be argued as to those parts of the auto that are open to view by the most casual passerby, it is just not true as to the locked trunk of the auto. All of us move in our autos effects that are most private, and when we do so we are more apt to put them in the trunk than in some other part of the vehicle. A subset of 'all of us,' i.e., judges and lawyers, often carry highly confidential papers in our autos, and if we are careful (as we ought to be) we probably lock them in the trunk.

" 'Despite the wealth of language that privacy in automobiles is less important than in other areas, most members of our society must frequently use automobiles to convey undeniably private papers and effects. For example, the workload of this court often requires judges to take their work home. The automobile provides the usual mode for transporting drafts of opinions, notations indicating the probable outcome of submitted cases, and confidential messages from other judges. To say that there is no expectation of privacy in such papers, release of which would constitute a dereliction of duty, would be to ignore reality. And judges are of course not alone in this regard.' *United States* v. *Edwards,* 554 F.2d 1331, 1338 (5th Cir. 1977)."

[9] We find the dissenters' heavy reliance on *State* v. *Delossantos,* 211 Conn. 258, 266–67, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989), puzzling. *State* v. *Delossantos,* supra, involved the search incident to arrest exception to the warrant requirement, not the automobile exception. Because our Supreme Court consistently has recognized that the two exceptions are conceptually distinct; see, e.g., *State* v. *Dukes,* 209 Conn. 98, 547 A.2d 10 (1988); *State* v. *Badgett,* 200 Conn. 412, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986); *State* v. *Delossantos,* supra, in no way controls our resolution of the issue before us in this case.

by the possibility that the accused or third parties may interfere with the search. Many of these concerns remain even when, as in *State* v. *Dukes,* supra, the accused is immobilized. Thus, even though the court in *Dukes* did not discuss whether exigent circumstances were present in that case, we do not believe that the court intended to bury, without discussion, the exigent circumstances requirement. A more reasonable conclusion is that that court felt that, in light of the fact that the case involved a roadside search, exigent circumstances were present. This conclusion is bolstered by an examination of *State* v. *Januszewski,* 182 Conn. 142, 156, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981), in which Justice Healey, the author of *State* v. *Dukes,* supra, wrote: "Whatever may be the circumstances in which a search warrant would be required before the search of an automobile, they certainly are not presented here. . . . Not only was the [automobile] inherently mobile, that is, capable of self-propulsion, *but it was parked on easily accessible property open to the public."* (Emphasis added.)

In reaching our decision, we reject the sole rationale offered by the Supreme Court in *Chambers* v. *Maroney,* supra, 52, in support of extending the automobile exception from the street to the station house: "The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." First, the assertion that probable cause to search obtained at the station house misses the point of the warrant requirement, which is that, whenever possible, the determination as

to whether probable cause exists "should be made by a neutral magistrate rather than an agent of the Executive." *California* v. *Acevedo,* supra, 1994. Second, the declaration that the mobility of the car still obtained at the station house "unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured" is circular and wholly unpersuasive. A vehicle impounded in a police lot clearly is not mobile in any sense that gives rise to any significant exigent circumstances. In addition, we see no constitutional problem with a brief warrantless seizure of an automobile, upon probable cause to believe that it is or contains the fruits or instrumentalities of a crime, for the time period necessary to apply for a warrant. Third, the statement that "there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained" demonstrates an astonishing disregard of reality. There may be a great deal to choose from in terms of practical consequences between an immediate warrantless search and an immobilization of the car until a warrant is obtained. Although reasonable people surely will disagree as to which is the less intrusive procedure, the point of our holding is that the choice is left to those whose privacy is or might be violated. As Justice Harlan observed, "persons who wish to avoid a search—either to protect their privacy or to conceal incriminating evidence—will almost certainly prefer a brief loss of the use of the vehicle in exchange for the opportunity to have a magistrate pass upon the justification for the search. To be sure, one can conceive of instances in which the occupant, having nothing to hide and lacking concern for the privacy of the automobile, would be more deeply offended by a temporary immobilization of his vehicle than by a prompt search of it. However, such a person always remains

free to consent to an immediate search, thus avoiding any delay." *Chambers* v. *Maroney,* supra, 64 (Harlan, J., dissenting).

The state, in its brief, points to a potential irony in our decision—that in our attempt to encourage the resort to judicial process, we will instead encourage the police to conduct complete vehicle searches before impounding an automobile. We believe that this fear, although perhaps justified, is overstated. First, under *State* v. *Dukes,* supra, the police are fully entitled to conduct a roadside search of an automobile upon probable cause to believe that it contains the fruits or instrumentalities of crime. Our Supreme Court apparently has no constitutional quarrel with such a procedure, even when the driver is handcuffed and belted into a police cruiser. See id. Second, we do not believe that the net gain in roadside searches—the number of instances in which police who otherwise would have conducted a station house search would instead conduct a roadside search in order to avoid applying for a warrant—would be particularly significant. Where the police want to pursue the fastest and easiest course, they presumably will conduct a roadside search whether or not we require a warrant before conducting a station house search. The process of securing and towing the vehicle is itself cumbersome and time consuming. Where the police fear for their safety, we fully expect them, if they want to conduct a search of the vehicle, to secure the vehicle at a safe location before searching it, even if applying for a warrant is the "price" the police pay for their safety. We neither encourage nor want the police to conduct searches under circumstances that pose a threat to their safety.

Undoubtedly, in light of our decision, there will be some instances where the police, in order to avoid having a neutral and detached magistrate determine whether probable cause to search exists, will conduct

a roadside search even though they would prefer to conduct a station house search. We have two responses to this. First, as we have just demonstrated, we believe that the number of these instances will not be significant. Second, we cannot allow the manner in which the police tailor their investigation of criminal activity in order to stay within the boundaries of our constitutional principles to dictate the constitutional principles themselves. To do so would be to stand this court's obligation to construe our state charter on its head.

We note that we are not alone in reaching this conclusion. Both Utah, in *State* v. *Larocco,* 794 P.2d 460 (Utah 1990), and Rhode Island, in *State* v. *Benoit,* 417 A.2d 895 (R.I. 1980), have squarely rejected the rule of *Chambers* v. *Maroney,* supra, as being incompatible with the search and seizure provisions of their state constitutions. Other states have reaffirmed, under their state constitutions, the absolute requirement that exigent circumstances be present whenever a warrantless automobile search is conducted. See *State* v. *Ritte,* 68 Haw. 253, 256–57, 710 P.2d 1197 (1985); *State* v. *Kock,* 302 Or. 21, 32–33, 725 P.2d 1285 (1986).[10]

---

[10] We also acknowledge, as the state points out, that other states have construed the search and seizure provisions of their state constitutions to allow a warrantless search under the automobile exception, even where exigent circumstances are absent at the time of the search. See *State* v. *Redfearn,* 441 So. 2d 200, 201–202 (La. 1983); *Commonwealth* v. *Moses,* 408 Mass. 136, 145, 557 N.E.2d 14 (1990); *State* v. *Gallant,* 574 A.2d 385, 390–91 (N.H. 1990); *State* v. *Tompkins,* 144 Wis. 2d 116, 137–38, 423 N.W.2d 823 (1988).

Although we noted earlier that we share a common colonial history with Massachusetts, we do not find the recent decision of the Supreme Judicial Court of Massachusetts in *Commonwealth* v. *Moses,* supra, persuasive. The search and seizure provisions of the fourth amendment to the United States constitution, article first, § 7, of the Connecticut constitution and article fourteen of the Massachusetts declaration of rights all were enacted in response to the same abusive practices. An analysis of the early history of the Massachusetts colony is useful in determining the intent of the framers of these provisions. We remain free, however, to disagree with both the United States Supreme Court and the Supreme Judicial Court of Massachusetts regarding modern applications of our state search and seizure provision.

We are ever mindful of the legitimate needs of law enforcement officials and do not cavalierly restrict the investigative tools at their disposal. Nonetheless, as Justice Stevens recently observed with regard to the warrant requirement of the federal constitution: "Even if the warrant requirement does inconvenience the police to some extent, that fact does not distinguish this constitutional requirement from any other procedural protection secured by the Bill of Rights. It is merely a part of the price that our society must pay in order to preserve its freedom." *California* v. *Acevedo,* supra, 2002–2003 (Stevens, J., dissenting).

In light of our Supreme Court's decision in *State* v. *Badgett,* 200 Conn. 412, 432–34, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), our conclusion that the warrantless search of the defendant's automobile was not excused by the automobile exception to the warrant requirement does not require us to exclude the evidence unlawfully seized. Rather, we must remand the case to the trial court for further proceedings to determine whether the evidence illegally seized can be admitted under the "inevitable discovery" exception to the exclusionary rule adopted by the United States Supreme Court in *Nix* v. *Williams,* 467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). *State* v. *Badgett,* supra, 432–33.

"Under the inevitable discovery rule, evidence illegally secured in violation of the defendant's constitutional rights need not be suppressed if the state demonstrates by a preponderance of the evidence that the evidence would have been ultimately discovered by lawful means. [*Nix* v. *Williams,* supra,] 444. To qualify for admissibility the state must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued *prior* to the occurrence of the constitutional violation. *United States* v. *Cherry,* 759 F.2d 1196, 1205

(5th Cir. 1985); *United States* v. *Satterfield,* 743 F.2d 827, 846 (11th Cir. 1985). In *Nix* v. *Williams,* supra, 443, the United States Supreme Court observed that the operation of the exclusionary rule in situations where the police would have inevitably discovered the evidence by legal means already initiated would put the state in a worse position than it would have been in if no police misconduct had transpired. 'Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place.' Id., 447.

"In light of *Nix* v. *Williams,* we remand the case to the trial court to determine whether the inevitable discovery doctrine is applicable under the circumstances of this case. See *New York* v. *Class,* 475 U.S. 106, 119n., 106 S. Ct. 960, 89 L. Ed. 2d 81 (1986). . . . Among the factors to be considered are: (1) whether an inventory search would have been justified under the circumstances; (2) whether such a search would have been conducted according to standard [West Hartford] police operating procedures; and (3) whether a search pursuant to these procedures would have uncovered the [gun]. See *South Dakota* v. *Opperman,* [428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976)]; *State* v. *Gasparro,* [194 Conn. 96, 107, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985)]." (Emphasis in original.) *State* v. *Badgett,* supra, 433–34; compare *State* v. *Roseboro,* 221 Conn. 430, 446, 604 A.2d 1286 (1992).[11]

The case is remanded for further proceedings in accordance with this opinion.

In this opinion FOTI, LAVERY, LANDAU and FREEDMAN, Js., concurred.

---

[11] Our decision to remand this case for further proceedings is not intended to foreclose a subsequent appeal from the trial court's judgment on remand. See *State* v. *Badgett,* 200 Conn. 412, 432 n.10, 512 A.2d 160 (1986).

NORCOTT, J., with whom DUPONT, C. J., and O'CONNELL, J., join, concurring in part and dissenting in part. We have no quarrel with the majority's recognition of the well established principle that our state constitution, when appropriate, can "afford our citizens broader protection of certain personal rights than that afforded by similar or even identical provisions of the federal constitution." *State* v. *Dukes,* 209 Conn. 98, 112, 547 A.2d 10 (1988); *State* v. *Geisler,* 25 Conn. App. 282, 287, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992). We also have no argument with the majority's obvious acceptance of the often repeated constitutional tenet that a "search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." (Citations omitted; internal quotation marks omitted.) *State* v. *Badgett,* 200 Conn. 412, 423, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

While we agree with parts I and II of the majority's opinion, the dispositive issue of this case involves examination of the defendant's evidentiary claim under the fourth amendment to the federal constitution and article first, § 7, of our state constitution. Both provisions create a reasonableness standard and proscribe only *unreasonable* searches and seizures. *State* v. *Dukes,* supra, 121. "There is no ready test for determining reasonableness other than by balancing the need to search or seize against the invasion which the search or seizure entails." *State* v. *Januszewski,* 182 Conn. 142, 148, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

The majority revisits one of the four well recognized automobile exceptions[1] to the warrant requirement and

---

[1] "There are four recognized situations where a warrantless search of a car may lead to the conclusion that such a search was reasonable under

concludes that the search of the defendant's car in this case violates article first, § 7, of the Connecticut constitution. We conclude that under existing state decisions, the search does not violate the Connecticut constitution.

Our constitutional preference for warrants is the underpinning of the majority's conclusion that the police in this case should have obtained a warrant before searching the trunk of the defendant's automobile after it was impounded at the police station subsequent to its seizure with probable cause. In its rush to establish that we must give our preference for warrants more than lip service, the majority glosses over United States and Connecticut Supreme Court precedent recognizing the vitality of the automobile exceptions to the warrant requirement; see, e.g., *Chambers* v. *Maroney,* 399 U.S. 42, 52, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); *Carroll* v. *United States,* 267 U.S. 132, 153, 45 S. Ct. 280, 69 L. Ed. 543 (1925); *State* v. *Dukes,* supra, 120; *State* v. *Badgett,* supra, 428; as well as the indubitable principle that once probable cause has been established, a warrantless seizure and search of an automobile at the scene of an initial stop is not unreasonable. See, e.g., *Chambers* v. *Maroney,* supra; *Carroll* v. *United States,* supra; *State* v. *Dukes,* supra; *State* v. *Badgett,* supra. The majority also does not note Connecticut precedent that concludes, relying on federal precedent, that a warrantless search of an automobile, with probable cause, conducted after the initial seizure at a place other than the scene of seizure is not unrea-

the United States or state constitutions. They are: (1) it was made incident to a lawful arrest; (2) it was conducted when there was probable cause to believe that the car contained contraband or evidence pertaining to a crime; (3) it was based upon consent; or (4) it was conducted pursuant to an inventory of the car's contents incident to impounding the car. *State* v. *Reddick,* 189 Conn. 461, 467, 456 A.2d 1191 (1983)." *State* v. *Murphy,* 6 Conn. App. 394, 396 n.1, 505 A.2d 1251 (1986). The present case involves the second situation.

sonable. *State* v. *Johnson,* 183 Conn. 148, 438 A.2d 851 (1981); *State* v. *Schoenbneelt,* 171 Conn. 119, 368 A.2d 117 (1976); *State* v. *Quinones,* 21 Conn. App. 506, 574 A.2d 1308 (1990). Nor does the majority consider Connecticut precedent that has thus far refused to deviate from federal constitutional precedent in the area of warrantless searches of automobiles, even when requested to do so under the state constitution. See *State* v. *Delossantos,* 211 Conn. 258, 266–67, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989).

In *State* v. *Delossantos,* supra, the defendant urged the court to use state constitutional grounds to abandon federal constitutional requirements for a warrantless search of a car incident to a lawful arrest, and urged that *New York* v. *Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), be abandoned and replaced with a case-by-case evaluation of the ability of the arrested defendant at the scene of the arrest to destroy or reach contraband in his or her car. The *Delossantos* court stated: "In considering the level of individual protection and the scope of a warrantless search of an automobile under article first, § 7, of the Connecticut constitution, we have observed that 'our automobile exception permits a warrantless search of an automobile whenever the police have probable cause to do so. See, e.g., *State* v. *Badgett,* [supra]. It is also correct that we recognized that the police may make a search without a warrant incident to a lawful custodial arrest. Id., 424 . . . .' " *State* v. *Delossantos,* supra, 266. The Supreme Court in *Delossantos* did not abandon the federal rule in favor of one that gave broader rights under the state constitution, although it had been specifically asked to do so. There is no reason to conclude that the Connecticut Supreme Court, having followed the federal cases when the warrantless search is incident to a lawful arrest, would not fol-

low federal law when the issue is whether a warrant-less search not incident to a lawful arrest is conducted after the car has been removed from the scene of the seizure, where probable cause for the search exists. It is not for this court to decide whether a Supreme Court holding should be reevaluated and possibly discarded. *Brunswick* v. *Inland Wetlands Commission,* 25 Conn. App. 543, 553, 596 A.2d 463 (1991), rev'd on other grounds, 222 Conn. 541, 598 A.2d 1100 (1992); *Board of Education* v. *Bridgeport Education Assn.,* 9 Conn. App. 199, 203, 518 A.2d 394 (1986), cert. denied, 202 Conn. 802, 519 A.2d 1206 (1987).

The majority disagrees with the well established prin-ciple that if an immediate warrantless search of a vehi-cle on the street is permissible because probable cause to search exists, then a warrantless search soon there-after at the police station also is permissible. *United States* v. *Johns,* 469 U.S. 478, 485, 105 S. Ct. 881, 83 L. Ed. 2d 890 (1985); *United States* v. *Ross,* 456 U.S. 798, 807 n.9, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); *Chambers* v. *Maroney,* supra, 52; *Texas* v. *White,* 423 U.S. 67, 68, 96 S. Ct. 304, 46 L. Ed. 2d 209 (1975) (per curiam).

The rationale of *Chambers* was expressed as follows: "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magis-trate and on the other hand carrying out an immedi-ate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers* v. *Maroney,* supra. Extend-ing this rationale further to apply to the situation of the impounded vehicle, the United States Supreme Court stated that the decision to allow the warrantless search of an impounded vehicle was "based on the prac-ticalities of the situations presented and a realistic

appraisal of the relatively minor protection that a contrary rule would provide for privacy interests." *United States* v. *Ross,* supra.

It is against this overwhelming body of federal and state precedent that we should carefully examine the facts of this case.

The majority, it should be noted, does not dispute that under current Connecticut law probable cause to seize and search existed at the time the defendant's vehicle was stopped on a public street. This vehicle had been identified by witnesses as the one used earlier in the armed robbery of a store. Further, the majority concedes that the police could lawfully have conducted a warrantless search of the vehicle on the street because there was probable cause to believe the instrumentalities of the crime were within the car.

The majority, however, does not resolve or explain what happened to the probable cause during the trip from the place where the vehicle was first stopped to the police station where it was impounded. We do not believe that probable cause to search the vehicle was any more or less existent when the vehicle was impounded at the police station than it was when it was first stopped on the street.

The difficulty with the majority's approach is that it seizes on what amounts to no more than an anomaly among automobile exception cases and attempts to resolve a perceived problem by finding greater protections for Connecticut citizens under article first, § 7. In fact, the majority's dissatisfaction is not with any factual wrinkle under the automobile exceptions, but with the rationale of the entire *Chambers* line of cases because, in the majority's view, the principle of exigent circumstances is paramount and when there is no exigency a search warrant must be obtained.

The majority's state constitutional analysis fails to articulate either an independent basis for its conclusion that article first, § 7, provides greater protections for Connecticut citizens than does the fourth amendment, or exactly what those protections are and how they can be practically applied. Rather than balancing our state Supreme Court's preference for search warrants; see, e.g., *State* v. *Barton,* 219 Conn. 529, 540, 594 A.2d 917 (1991); *State* v. *Marsala,* 216 Conn. 150, 168–69, 579 A.2d 58 (1990); with the well established principle that only unreasonable searches and seizures are prohibited by our federal and state constitutions, the majority rushes to conclude that our state constitution demands greater protection for our citizens' privacy interests than is afforded by its federal counterpart.

While we agree with the majority's implicit view that we should not approach state constitutional jurisprudence only in response to federal retrenchments from fourth amendment protections, we also believe that our state constitution is an organic vehicle that, in and of itself, can provide greater safeguards than its federal counterpart, regardless of how the federal document has been interpreted. Where police behavior has been concerned, this court and the Connecticut Supreme Court have not hesitated to construe provisions in our state constitution to provide our citizens with greater protections than those afforded by consonant provisions in the federal constitution. See, e.g., *State* v. *Barton,* supra; *State* v. *Marsala,* supra; *State* v. *Geisler,* supra. This is especially true when our highest federal court has deviated or retreated from its previously broad protective readings of the fourth amendment. See, e.g., *State* v. *DeFusco,* 27 Conn. App. 248, 256, 606 A.2d 1, cert. granted, 222 Conn. 910, 608 A.2d 693 (1992), citing *State* v. *Marsala,* supra; *State* v. *Geisler,* supra. Thus far, in the context of unreasonable searches and

seizures, our state constitution has not been interpreted to afford protections not previously recognized under the federal constitution or beyond those safeguards already enunciated under well settled interpretations of the fourth amendment. See *State* v. *DeFusco,* supra, 257, citing *State* v. *Dukes,* supra.

Because there has been no federal retreat from entrenched fourth amendment protections, and because we are not confronted with a factual situation from which we can properly announce safeguards under article first, § 7, that go beyond those enunciated by well settled federal interpretations of the fourth amendment, and, most of all, because we must follow the law as it presently has been enunciated by the Supreme Court of Connecticut, we cannot agree with the majority.

Although the majority states that "distinct, principled jurisprudential theories" now exist with respect to state constitutional analysis, we cannot find that underlying "theory."[2] We should be ever mindful that neither this court nor our state Supreme Court has ever "viewed constitutional language as newly descended from the firmament like fresh fallen snow upon which jurists may trace out their individual notions of public policy . . . ." *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 62, 469 A.2d 1201 (1984).

[2] It is interesting that the majority, in its historical analysis of our state constitution, mentions that the "Massachusetts experience" is "particularly instructive" relative to article first, § 7, of our state constitution. The majority suggests that the common historical experiences of our two states lead to the conclusion that the "preference for warrants" should be the same under both state constitutions. Yet, in *Commonwealth* v. *Moses,* 408 Mass. 136, 557 N.E.2d 14 (1990), a case involving similar facts, the Supreme Judicial Court of Massachusetts held that a reasonable delay in the warrantless search of the trunk of the car at the police station did not violate either the fourth amendment of the federal constitution *or* article fourteen of the Massachusetts constitution.

Under the circumstances of this case, we cannot ignore the reasoning of the United States Supreme Court in *Chambers* and *Ross*, or the decided Connecticut cases. In the federal cases, the court rejected the fiction that continually extant probable cause needs to be *reestablished* by a neutral magistrate before a warrantless search of a vehicle can be conducted at the police station, when a warrantless search could occur on the street, perhaps only blocks from the station, even in situations where exigent circumstances do not exist. The Connecticut Supreme Court has stated that although early United States Supreme Court cases suggest an "exigency exception to the warrant requirement based upon the actual or threatened mobility of the motor vehicle, the court's later decisions on the subject have dispelled that suggestion." *State* v. *Januszewski,* supra, 154.

Given the fact that there is a diminished expectation of privacy in an automobile to begin with; *United States* v. *Chadwick,* 433 U.S. 1, 12, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977); *Cardwell* v. *Lewis,* 417 U.S. 583, 590, 94 S. Ct. 2464, 41 L. Ed. 2d 325 (1974); *State* v. *Pittman,* 209 Conn. 596, 602, 553 A.2d 155 (1989); *State* v. *Morrill,* 197 Conn. 507, 541–42, 498 A.2d 76 (1985); if probable cause existed to search the automobile on the street and the defendant's privacy interest in it is the same at the police station as on the street, we fail to see exactly what increased privacy interests the majority's state constitutional analysis extends to the citizens of our state.

Finally, we should not forget that the Connecticut Supreme Court has stated that " '[t]he rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating . . . often opposing interests. . . .' " *State* v. *Kimbro,* 197 Conn. 219, 223, 496 A.2d 498 (1985). "Dressed today in Connecticut constitutional

finery"; *State* v. *Barton,* supra, 554 (*Glass, J.,* concurring in part, dissenting in part); the majority's analysis ignores the probable cause requirement and attempts to topple the analytical framework underlying one of the automobile exceptions by grafting onto it the hollow procedural formality of a warrant requirement when the vehicle has been removed to the police station. Although no exigent circumstances at all existed at the police station, almost none existed at the time and place of seizure. To follow the majority's reasoning ineluctably leads to the result that if a warrant is required at the place of impoundment for lack of exigent circumstances, then a warrant must be obtained before a search can be conducted at the location where the vehicle was first stopped when exigent circumstances evaporate there. When the defendant's car was towed from the scene, the defendant had not yet been arrested, he was not present and no exigent circumstances existed there.

We firmly believe, as does the majority, that state constitutions are, in the words of Justice William J. Brennan, Jr., "a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law." W. Brennan, "State Constitutions and the Protection of Individual Rights," 90 Harv. L. Rev. 489, 491 (1977). We certainly should not regard our state constitution as an ephemeral document; see, e.g., *State* v. *Dukes,* supra, 115; but instead must apply it, when appropriate, to give effect to the noble principles to which the majority alludes. At the same time, however, we must remember that "[a] principle to be vital must be of wider application than the mischief that gave it birth." W. Brennan, supra, 495. The factual circumstances here are truly anomalous. Will not the police in the vast majority of automobile search cases conduct

a warrantless but valid search either at the site of the stop or at the police station pursuant to a warrantless but valid inventory search when probable cause exists to believe a car contains contraband? We do not mean to imply that once probable cause has been established that it cannot be lost. When probable cause to search a vehicle exists, the search must be made seasonably or fourth amendment search warrant requirements will intervene.

Judges are continually engaged in the delicate yet difficult task of balancing various concerns involving conflicting rights and duties. We seek to protect society as a whole from unlawful activity while at the same time ensuring that individual citizens' constitutional protections are not intruded upon or eroded. It was former Chief Justice Roger J. Traynor of the Supreme Court of California who once stated that judges must keep "the peace between the Constitution and common sense." R. Traynor, "The Devils of Due Process in Criminal Detection, Detention, and Trial," 33 U. Chi. L. Rev. 657, 680 (1966).

We are unable to accept the result the majority feels compelled to reach because we believe that the law, as already stated by the Connecticut Supreme Court to date, and our common sense require our dissent. Accordingly, we concur in parts I and II of the majority's opinion, and dissent from part III.

DALY, J., concurring in part and dissenting in part. Although I agree with parts I and II of the majority opinion, I disagree with the majority's holding that article first, § 7, of the Connecticut constitution prohibits a warrantless search of an impounded automobile. While the existence of exigent circumstances may disappear once the automobile is impounded, the probable cause to search the defendant's automobile does not disappear once the police secure it. As long as the police have probable cause to believe that the automobile con-

tains evidence or instrumentalities of a crime, they should be allowed to search it either at the scene or at the station house after removing it from the scene.

"Both the fourth amendment to the United States constitution and article first, § 7, of the constitution of Connecticut create a reasonableness standard; both proscribe only unreasonable searches and seizures." *State* v. *Dukes,* 209 Conn. 98, 121, 547 A.2d 10 (1988). The majority focuses on the fact that once the automobile is immobilized, exigent circumstances that support the automobile exception to the warrant requirement no longer exist. The other basis for allowing warrantless searches of automobiles, however, is that there is a lesser expectation of privacy concerning an automobile as compared to a house or an office. See *California* v. *Carney,* 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985); *State* v. *Badgett,* 200 Conn. 412, 428, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). The majority fails to consider this aspect of the warrant exception for automobile searches.

In *State* v. *Dukes,* supra, 120, our Supreme Court noted "that our automobile exception permits a warrantless search of an automobile whenever the police have probable cause to do so." The court focused on the probable cause requirement and the lesser expectation of privacy concerning automobiles. The existence of probable cause that the vehicle contains contraband is crucial before the police may conduct a warrantless search of an automobile. " 'Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . *and* (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched.' (Emphasis in original; citations omitted.) *State* v. *DeChamplain,* [179

248

Conn. 522, 528–29, 427 A.2d 1338 (1980)] . . . ." (Citation omitted.) *State* v. *Delmonaco,* 194 Conn. 331, 337, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984). The majority concedes that the police had probable cause to believe that the defendant's automobile was used in the armed robbery of the supermarket. Therefore, the police were entitled to conduct a roadside search of the automobile. *State* v. *Dukes,* supra, 120. The majority's requirement of a warrant to search an impounded automobile does not provide any greater protection because the analysis will be the same in either situation. The state must still establish that objective facts supporting a finding of probable cause that the vehicle contained contraband or the instrumentalities of a crime existed at the time of the search whether done by acquiring a warrant after impounding the vehicle or at a motion to suppress the items recovered by a warrantless search of the vehicle.

I recognize that "[d]espite the fact that one does not enjoy the same expectation of privacy as to the interior of his motor vehicle as one does in the interior of one's home, nevertheless, '[t]he word "automobile" is not a talisman in whose presence the fourth amendment fades away and disappears.' *Coolidge* v. *New Hampshire,* 403 U.S. 443, 461, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) . . . . The same applies to an 'automobile' under article first, § 7, of the constitution of Connecticut." *State* v. *Dukes,* supra, 126. "The exception to the warrant requirement in an automobile search demands that the searching officer have probable cause to believe that the vehicle contains contraband" or evidence related to a crime as recognized under the federal and state constitution. Id. Again, the state must show that there was probable cause to search the vehicle. This should be the critical factor when determining if the search was reasonable rather than the existence of exigent circumstances that the majority relies on to extend the state constitutional protections.

Once probable cause is established to search the automobile at the scene, it does not disappear just because the vehicle is moved from the scene to the police station. The movement of the automobile does not transform an otherwise reasonable search into an unreasonable one.

The majority opinion focuses only on the exigent circumstances aspect of the automobile exception to the warrant requirement. The majority fails to examine adequately the lesser expectation of privacy aspect of automobiles and the existence of probable cause to believe that the vehicle contained contraband in reaching its conclusion that a warrant is required when police remove an automobile from the place of its initial seizure. The critical element is that probable cause to search the vehicle must be established to justify the warrantless search. Because there was probable cause to believe that contraband was located in the defendant's automobile, the search at the station was reasonable under both the federal and state constitutions. I do not believe that this case provides an adequate basis for extending further protection under our state constitution. I also question whether the majority's warrant requirement for immobilized vehicles seized by the police will in actual practice provide greater protection of personal privacy.

For these reasons, I respectfully dissent.