### STATE OF CONNECTICUT *v.* RUSSELL KUSKOWSKI
### (12169)

HEALEY, SHEA, DANNEHY, SANTANIELLO and DEAN, Js.

Argued February 6—decision released June 3, 1986

*Daniel D. Skuret,* with whom, on the brief, was *Michael Moher,* for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, were *Dennis Santore,* state's attorney, *John M. Massameno,* assistant state's attorney, and *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

DANNEHY, J. A jury found the defendant guilty of both possession of cocaine in violation of General Statutes (Rev. to 1981) § 19-481 (a) and possession of cocaine with intent to sell in violation of General Statutes (Rev. to 1981) § 19-480 (a). He was sentenced to concurrent terms of nine years for the latter offense with all but six years suspended, with three years probation, and one year for possession of cocaine. The defendant claims on appeal that the trial court erred: (1) in denying his motion to suppress physical evidence; (2) in denying his motion to suppress oral statements; and (3) in allowing the state toxicologist to testify that the substance recovered from the defendant was analyzed and found to be cocaine. We find no error.

On May 3, 1982, at approximately 11:41 p.m., Officer Maureen Doherty of the Brookfield police department was on routine patrol duty near Lake Lillinonah in Brookfield, several hundred yards from the neighboring town of Bridgewater. Across the lake, Doherty noticed a car with its interior light on parked in a boat launch area in Bridgewater. Doherty drove into Bridgewater, approached the car, and found the defendant unconscious in the driver's seat with a burning propane torch on his lap. Doherty roused the defendant, removed him from the car, and shut off the propane torch. She asked for his identification, and whether he was all right. The defendant responded that he had fallen asleep, but was "okay now." Doherty had noticed drug paraphernalia on the console and passenger seat of the defendant's car. After other officers from the Brookfield police department arrived, Doherty conducted a full search of the defendant's car. In the trunk she found two thermos bottles filled with cocaine. Trooper Jerry Roberts of the state police arrived, arrested the defendant, and read him his *Miranda* rights. The defendant told Roberts that the cocaine was for his personal use, and that he had been "free basing" in his car when Doherty found him. Later, at the state police barracks, the defendant stated that he sold cocaine to his friends at work. Other facts relevant to the defendant's claims on this appeal are stated in the opinion.

## I

### FOURTH AMENDMENT

The defendant claims that the warrantless search of his automobile by Doherty was in violation of the fourth amendment to the United States constitution, and article first, § 7, of the Connecticut constitution. We address these claims only briefly. The defendant's argument is based on the faulty premise that Doherty vio-

lated the law when she left her jurisdiction and entered the town of Bridgewater to investigate the defendant's vehicle. We reject this premise. The defendant's car was parked in a public boat launch area in the town of Bridgewater. Doherty, no less than any other citizen, had a right to stand beside the defendant's car and peer in. When she saw the defendant passed out in the driver's seat with a propane torch burning in his lap, she had every reason to rouse the defendant and put out the fire. In so doing, she observed cocaine and drug paraphernalia in plain sight on the console and passenger seat. These observations gave her probable cause to believe that the vehicle contained contraband and thus to seize and search the car, including the trunk, without a warrant. *United States* v. *Johns,* 469 U.S. 478, 105 S. Ct. 881, 83 L. Ed. 2d 890 (1985); *Texas* v. *Brown,* 460 U.S. 730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983); *United States* v. *Ross,* 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982).

The defendant also claims that he was arrested by Brookfield police officers, and that this arrest was unlawful because the Brookfield police were beyond their jurisdiction in the town of Bridgewater. The state counters that the defendant was not arrested until later, when Trooper Roberts of the state police arrived and formally placed him under arrest. We need not decide the precise point at which the arrest occurred in this case, because Brookfield police officers were not without lawful authority to arrest the defendant in the town of Bridgewater.

The authority to arrest without a warrant is set forth in General Statutes § 54-1f. Subsection (b) provides that "[m]embers of . . . any local police department . . . shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony." General Statutes § 54-1f (b) does not limit the authority to

make warrantless felony arrests to any particular political subdivision within the state. Subsection (b) stands in sharp contrast to subsection (a), which concerns the authority to make warrantless misdemeanor arrests. *Martyn* v. *Donlin,* 151 Conn. 402, 409–10, 198 A.2d 700 (1964); *State* v. *DelVecchio,* 149 Conn. 567, 573–74, 182 A.2d 402 (1962); see *State* v. *Anonymous (1977-5),* 34 Conn. Sup. 531, 538–39, 375 A.2d 417 (1977) (statutory history). Subsection (a) provides that members of a local police department "shall arrest, without previous complaint and warrant, any person for any offense *in their jurisdiction,* when the person is taken or apprehended in the act or on the speedy information of others." (Emphasis added.) Read together, these subsections clearly indicate that a member of a local police department does not violate General Statutes § 54-1f by making a warrantless felony arrest beyond the territorial jurisdiction of his or her local police department. The Brookfield police officers clearly had probable cause to believe that the defendant possessed cocaine in his automobile. Under the circumstances of this case, this probable cause supported the defendant's arrest and the subsequent search of his car. The trial court did not err in denying the defendant's motion to suppress the cocaine and narcotics paraphernalia seized from his automobile.

## II

### FIFTH AMENDMENT

We next address the defendant's claim that the trial court erred in denying his motion to suppress incriminating statements that he made to his arresting officers. It is undisputed that Doherty never advised the defendant of his *Miranda* rights before she attempted to ascertain whether anything was wrong with him. *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Under the circumstances, it was

not necessary that she do so. What Doherty saw when she looked into the defendant's car, was an unconscious individual with a burning propane torch on his lap. The circumstances demanded that she react in the manner in which she did. After the defendant told her that he had merely fallen asleep, she asked him to show her some identification. At this point the defendant was not in custody, he was not being interrogated, he gave no incriminating answers, and he was not entitled to *Miranda* warnings.

The defendant was formally arrested by Roberts, who arrived at the scene shortly after the Brookfield police officers. Roberts advised the defendant of his rights, and began to question him during the ride to the state police barracks. The defendant never signed a waiver form, and was never asked if he would agree to waive his *Miranda* rights. On appeal he claims that his confession was involuntary, and that he did not voluntarily, knowingly and intelligently waive his *Miranda* rights.

Roberts testified that he read the defendant his *Miranda* rights from a printed card before placing him in the cruiser. He asked the defendant if he understood his rights and the defendant responded that he did. The defendant told Roberts that after fishing all day, he had returned to his car where he fell asleep. The defendant also stated that the cocaine recovered from his car was for personal use. The defendant was again advised of his *Miranda* rights at the state police barracks. He again replied that he understood his rights although he was not asked to sign a written waiver form. In response to questioning, the defendant stated that he sold cocaine to friends at work. He also told the troopers that he wanted to cooperate with them. The interrogation at the state police barracks lasted between fifteen and twenty minutes. The defendant appeared to be alert, conducted himself normally, and

did not appear to experience any adverse effects from the ingestion of cocaine. He made eye contact with the troopers as he spoke, and responded to their questions freely and without hesitation.

The defendant denied that he had made the incriminating statements attributed to him by the troopers. He testified that he never stated that the cocaine found in his car was for personal use, or that he sold cocaine to friends at work. He further testified that he had requested an attorney.

The trial court rejected the defendant's testimony as not credible, and found that the defendant had not requested counsel. It further found that the defendant's statements were made voluntarily. Although the defendant never expressly waived his *Miranda* rights, the "United States Supreme Court [has] held that a waiver of the *Miranda* rights need not be by an express statement but may be inferred from the actions or words of the person interrogated." *State* v. *Wilson,* 183 Conn. 280, 284, 439 A.2d 330 (1981); *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); see *State* v. *Pecoraro,* 198 Conn. 203, 207–208, 502 A.2d 396 (1985). Where the defendant has not expressly waived his *Miranda* rights, the state must demonstrate "(1) that the defendant *understood* his rights, and (2) that the defendant's *course of conduct* indicated that he did, in fact, waive those rights." (Emphasis in original.) *State* v. *Wilson,* supra, 285; *State* v. *Derrico,* 181 Conn. 151, 169, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

The defendant in this case was twice advised of his *Miranda* rights, and twice indicated that he understood them. One who understands his *Miranda* rights must necessarily understand that anything he says to police may later be used against him in court. The defendant

never indicated that he did not want to speak with the troopers, and in fact affirmatively stated that he wanted to cooperate with them. There was no evidence whatsoever that the troopers made any threats or promises to the defendant, or mentally or physically abused him in any way. The interrogation at the state police barracks lasted for less than one half hour. The defendant had just been caught with a large quantity of cocaine in his vehicle, and a burning propane torch in his lap. The trial court could reasonably have concluded from the circumstances disclosed by the evidence that the defendant's entire course of conduct evinced a spirit of cooperation with his arresting officers.

The defendant presented no evidence which might have supported a finding by the trial court that his statements were involuntary, or that he did not voluntarily, knowingly and intelligently waive his *Miranda* rights. While the defendant has no burden to present such evidence, the testimony of the state's witnesses fully supports the trial court's ruling denying the defendant's motion to suppress his oral statements. The trial court, as trier of fact, had the right to disbelieve the defendant's testimony that he requested counsel. We therefore find that the trial court did not err in denying the defendant's motion to suppress his oral statements.

## III

### TOXICOLOGY REPORT

The state offered the testimony of Joel Milzoff, a toxicologist employed by the Connecticut department of health services, to establish that the white powdery substance found in the defendant's car was cocaine. Milzoff testified that four different analytical tests were performed on the substance by Carol Hassett, a chemist under Milzoff's direction. The defendant objected to the admissibility of Milzoff's testimony on the grounds that

it was hearsay and that it deprived him of his sixth amendment right of confrontation. The trial court overruled the objection.

In *State* v. *Cosgrove,* 181 Conn. 562, 569–84, 436 A.2d 33 (1980), we extensively considered this very claim. The gist of our holding was that where the testing procedure is reliable, the test results may be admitted into evidence through someone other than the actual chemist who performed the test. *State* v. *Rawls,* 198 Conn. 111, 115–17, 502 A.2d 374 (1985). The procedures and techniques utilized by Hassett in testing the cocaine were established by Milzoff himself, and he had personally tested those procedures and techniques. On voir dire by the defendant Milzoff explained in great detail the four analytical tests used in this case. Moreover, Milzoff had been present in the laboratory when Hassett performed the tests on the substances seized from the defendant's car. Finally, Milzoff testified that he had reviewed the raw test data developed by Hassett and reached his own independent conclusion that the substance was cocaine.

There was ample evidence before the trial court from which it could reasonably have determined that the testing procedure used in this case was reliable. The trial court did not err in overruling the defendant's objection to Milzoff's testimony.

There is no error.

In this opinion the other justices concurred.