STATE OF CONNECTICUT *v.* JEFFREY L. HARRISON
(10591)

LAVERY, LANDAU and SCHALLER, Js.

Argued November 2, 1992—decision released January 19, 1993

*Barry N. Silver,* with whom, on the brief, was *David A. Leff,* for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *Susan M. Naide,* assistant state's attorney, and *Joseph Corradino,* deputy assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a trial to the jury, of operating a motor vehicle while under the influence of intoxicating liquor or drugs or both in violation of General Statutes § 14-227a (a) (1).[1] The defendant claims that

---

[1] General Statutes § 14-227a provides in pertinent part: "(a) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and

the trial court improperly (1) failed to grant the defendant's pretrial motion to dismiss, (2) failed to grant the defendant's motion for judgment of acquittal because there was insufficient evidence that the defendant had operated his vehicle on a public highway as required by General Statutes § 14-227a, and because the court improperly bound itself by a pretrial ruling, (3) permitted the arresting officer to refer to the defendant's refusal to take a breathalyzer test, (4) permitted the state's attorney to comment unfairly on the evidence in his closing argument, and (5) failed to grant the defendant's motion alleging insufficiency of the evidence to support the guilty verdict. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. While Officer Kevin Potter of the Branford police department was on patrol on Route 1 in the town of Branford at about 11 p.m. on June 6, 1990, he observed an unoccupied vehicle in front of the Lakeside Cafe. The vehicle's right signal light was on. After looking into the vehicle, he checked its registration through the police computer, found no record of the vehicle and left the area. Shortly thereafter, Potter saw the same vehicle traveling westbound on Route 1, swaying from side to side within the lane. Potter wanted to stop the vehicle to investigate because he believed that the operator might be intoxicated. The vehicle was on a curve on the road at the time, however, and recognizing that a stop at that point would be unsafe, Potter waited to halt the defendant's vehicle until it reached a driveway. The stop occurred just over the town line of East Haven.

maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

Potter observed beer cans in the defendant's car and noticed that the defendant's eyes were red and glassy. The defendant admitted that he had been drinking. Potter found the defendant's speech to be "somewhat slurred," and decided to have the defendant perform several sobriety tests. Potter observed that the defendant could not perform the nine step walk or recite the alphabet. The defendant told Potter that he was going home to Guilford but Potter noted that the defendant was traveling in a direction away from Guilford. Finally, Potter performed a horizontal gaze nystagmus test, which the defendant failed. Because the defendant failed these tests, Potter placed him under arrest. At the police station, Potter requested the defendant to take a breathalyzer test. The defendant indicated that he would be over the legal limit and did not want to take the test.[2]

I

THE ARREST

The defendant challenges his arrest on two grounds: (1) that the police officer lacked reasonable and articulable suspicion to stop his vehicle; and (2) that the arrest in East Haven violated General Statutes § 54-1f.[3] We disagree.

A

"[T]he principles of fundamental fairness that are the hallmark of due process permit a brief investigatory detention, even in the absence of probable cause, if the police have a reasonable and articulable suspicion that a person has committed or is about to commit a crime." State v. Lamme, 216 Conn. 172, 184, 579 A.2d 484 (1990); see Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In determining the constitutional

[2] See footnote 8, infra.
[3] See footnote 5, infra.

validity of an investigatory stop, both the United States Supreme Court and our Supreme Court require a balancing of the nature of the intrusion upon personal security against the importance of the government interest inducing that intrusion. *United States* v. *Hensley,* 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985); *State* v. *Mitchell,* 204 Conn. 187, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). Our Supreme Court has also recognized the pervasive societal interest in the apprehension and punishment of drunken drivers and has found that "balancing the circumscribed nature of a *Terry* stop intrusion against the serious risks of criminal behavior, especially in the context of the risks associated with driving while under the influence of intoxicating liquor, we are pursuaded that [brief detention] does not violate due process." *State* v. *Lamme,* supra.

In justifying the intrusion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* v. *Ohio,* supra, 21; *State* v. *Cofield,* 220 Conn. 38, 44, 595 A.2d 1349 (1991); *State* v. *Whitfield,* 26 Conn. App. 103, 110, 599 A.2d 21 (1991). In evaluating the validity of such a stop, courts consider whether, in light of "the totality of the circumstances—the whole picture," the police officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States* v. *Cortez,* 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *State* v. *Mitchell,* supra, 195. Review of a trial court's determination of whether a reasonable and articulable suspicion exists "involves a two part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct." *State* v. *Kyles,* 221 Conn. 643, 660, 607 A.2d 355

(1992). "The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts." *State* v. *Cofield,* supra.

In this case, the police officer observed the car the defendant was driving in the parking lot of a bar with a signal light turned on. Several minutes later, the officer observed that same car weaving in its lane. Putting these facts together, under the totality of the circumstances, the officer had an objective basis to suspect that the defendant may have been operating a motor vehicle under the influence of liquor or drugs or both.[4] The facts of this case support the trial court's determination that a reasonable and articulable suspicion existed. Therefore, the trial court's determination is not clearly erroneous. "The facts detailed above justified the defendant's detention for the limited intrusion of field sobriety testing to confirm or dispel the officer's suspicion." *State* v. *Gruver,* 27 Conn. App. 370, 376, 606 A.2d 39 (1992). This was a valid *Terry* stop.

The defendant also emphasizes that Potter did not observe him commit a violation before the investigative stop. This fact is irrelevant, however, because a reasonable and articulable suspicion can arise from conduct that alone is not criminal. Our jurisprudence has long recognized that "furtive" movements are not necessary to justify a limited intrusion. See, e.g., *State* v. *Corbuzzi,* 161 Conn. 371, 376, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 925 S. Ct. 677, 30 L. Ed. 2d 664 (1972) (stop legally justified after a police officer noted the circuitous route the vehicle was taking in a commercial area which was ordinarily deserted in

---

[4] Other jurisdictions have held, as we do here, that the weaving of a vehicle in its own lane provides reasonable and articulable suspicion to justify an investigative stop to determine if the driver is, in fact, intoxicated or impaired, thereby violating General Statutes § 14-227a. See, e.g., *State* v. *Beerbohm,* 427 N.W.2d 75 (Neb. 1988); *State* v. *Jones,* 386 S.E.2d 217 (N.C. App. 1989).

the early morning). Indeed, in *Terry* v. *Ohio,* supra, 30, the Supreme Court held that "where a police officer observes *unusual* conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot . . . and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for . . . other's safety," he is entitled to a limited intrusion to confirm or dispel his suspicion. (Emphasis added.)

## B

The defendant next claims that his arrest was illegal because Potter violated General Statutes § 54-1f[5]

[5] General Statutes § 54-1f provides: "(a) For purposes of this section, the respective precinct or jurisdiction of a deputy sheriff or a special deputy sheriff shall be wherever he is required to perform his duties. Peace officers, as defined in subdivision (9) of section 53a-3, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others, provided that no constable elected pursuant to the provisions of section 9-200 shall be considered a peace officer for the purposes of this subsection, unless the town in which such constable holds office provides, by ordinance, that constables shall be considered peace officers for the purposes of this subsection.

"(b) Members of the division of state police within the department of public safety or of any local police department or any chief inspector or inspector in the division of criminal justice shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony.

"(c) Members of any local police department or the office of state capitol security, sheriffs, deputy sheriffs, special deputy sheriffs and constables who are certified under the provisions of sections 7-294a to 7-294e, inclusive, and who perform criminal law enforcement duties, when in immediate pursuit of one who may be arrested under the provisions of this section, are authorized to pursue the offender outside of their respective precincts into any part of the state in order to effect the arrest. Such person may then be returned in the custody of such officer to the precinct in which the offense was committed.

"(d) Any person arrested pursuant to this section shall be presented with reasonable promptness before proper authority."

when he arrested the defendant outside Potter's jurisdiction. We disagree.

Section 54-1f (a) provides the authority by which a peace officer "shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others . . . ." The defendant relies on the words *in their jurisdiction* to support his argument that any arrest, for a misdemeanor, effected outside the jurisdiction of the officer would violate § 54-1f (a). The defendant's reliance is misplaced. The words "in their jurisdiction" modify the phrase "for any offense," not the word "arrest." Therefore, the offense occurs when facts lead to a reasonable and articulable suspicion that a crime is being committed, in that jurisdiction, which is later confirmed, albeit outside the jurisdictional boundary. In this case, the facts that led to a reasonable and articulable suspicion occurred in the officer's jurisdiction. Thus, although the arrest did not occur in that jurisdiction, the offense occurred in that jurisdiction. If we were to interpret the statute as the defendant suggests, a peace officer could not arrest a person who committed a misdemeanor in his jurisdiction if that person was fortunate enough to get beyond the jurisdictional line. "When a statute's meaning is ambiguous, compelling principles of statutory construction . . . require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable." (Citations omitted; internal quotation marks omitted.) *State* v. *Johnson,* 28 Conn. App. 708, 613 A.2d 1344, cert. granted, 224 Conn. 911, 617 A.2d 168 (1992).

The defendant's interpretation also ignores the plain language of § 54-1f (c), which provides that "[m]embers

of any local police department . . . who perform criminal law enforcement duties, when in immediate pursuit of one who may be arrested under the provisions of this section, are authorized to pursue the offender outside of their respective precincts into any part of the state in order to effect the arrest. Such person may then be returned in the custody of such officer to the precinct in which the offense was committed." General Statutes § 54-1f (c). "We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." *Turner* v. *Turner,* 219 Conn. 703, 713, 595 A.2d 297 (1991). Subsection (a), according to the defendant's interpretation, would not allow an officer who witnesses the commission of a misdemeanor in his jurisdiction to give chase beyond the borders of his jurisdiction because that officer would be unable to *arrest* the defendant in the officer's jurisdiction. Therefore, the defendant's construction of subsection (a) would render meaningless subsection (c), as applied to subsection (a). The language of the statute indicates no such limitation, nor will we accord such an interpretation to § 54-1f. Thus, the defendant's arrest is not illegal under § 54-1f.

We have previously determined that the arresting officer had a reasonable and articulable suspicion to make an investigatory stop of the defendant for the defendant's actions while in the officer's jurisdiction. The mere fact that the actual stop and arrest occurred just over the line in the town of East Haven will not undercut the validity of the arrest. The language of § 54-1f (c) is clear. The requirement of subsection (a), therefore, is that the offense, or the actions that lead to a reasonable and articulable suspicion that an offense has or is about to be committed, occur in the officer's jurisdiction.

This case is also distinguishable from *State* v. *Kuskowski,* 200 Conn. 82, 510 A.2d 172 (1986). In *Kuskowski,* an officer of the Brookfield police department was on patrol several hundred yards from the Bridgewater town line when she noticed a car with its interior lights on parked near a lake in Bridgewater. The officer crossed into Bridgewater to investigate. When she came upon the car she found that the defendant had passed out after "freebasing" cocaine.

Our Supreme Court held that because this was a felony arrest effected under § 54-1f (b), it did not matter where the arrest took place. The court held that § 54-1f (b) does not "limit the authority to make warrantless felony arrests to any particular political subdivision within the state. Subsection (b) stands in sharp contrast to subsection (a), which concerns the authority to make warrantless misdemeanor arrests. . . . Subsection (a) provides that members of a local police department 'shall arrest, without previous complaint and warrant, any person for any offense *in their jurisdiction,* when the person is taken or apprehended in the act or on the speedy information of others.' " (Citations omitted; emphasis in original.) Id., 85–86. At no time in *Kuskowski* did the arresting officer observe the defendant in her jurisdiction. In the case before us, however, the arresting officer conducted the investigatory stop that led to the defendant's arrest, on the basis of the defendant's actions *in that officer's jurisdiction.* This is not a situation in which a peace officer witnesses a misdemeanor committed in another jurisdiction, and crosses into that jurisdiction to effect an arrest. Therefore, the officer was well within the ambit of the statute when he stopped and then arrested the defendant in East Haven on the basis of a reasonable and articulable suspicion developed from the defendant's actions while in the officer's jurisdiction.

## II

### Public Highway

In his second claim, the defendant asserts that the state failed to prove beyond a reasonable doubt that Route 1 is a public highway. We disagree.

Each essential element of the crimes charged must be proven beyond a reasonable doubt. *State* v. *Brown,* 199 Conn. 14, 21, 505 A.2d 690 (1986). "Where it cannot be said that a rational trier of fact could find guilt proven beyond a reasonable doubt, then, a conviction cannot 'constitutionally stand,' as it is violative of due process under the fourteenth amendment." Id. We presume that the jury uses common sense in its deliberations; *State* v. *Mazzetta,* 21 Conn. App. 431, 436, 574 A.2d 806, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990); and is not limited to consideration of the direct evidence but is free to draw reasonable, logical inferences from the facts proved. *State* v. *Morrill,* 193 Conn. 602, 608, 478 A.2d 994 (1984). A conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs or both requires proof of (1) operation of a motor vehicle (2) on a public highway or on one of the other designated areas (3) while under the influence of intoxicating liquor or drugs or both. General Statutes § 14-227a; *State* v. *Lonergan,* 213 Conn. 74, 80, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990). The defendant does not dispute the first element of this crime, and we will deal with the third element later in this opinion.

"Public highway" is not a term of art. See General Statutes § 14-1 (34). The plain meaning of the word "highway" is "a main road or thoroughfare; hence, a road or way open to the use of the public. [T]he essential feature of a highway is that every traveler has an

equal right in it with every other traveler." *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 485, 362 A.2d 523 (1975); *Laufer* v. *Bridgeport Traction Co.,* 68 Conn. 475, 488, 37 A. 379 (1897). Thus, it is a way over which the public at large has a right to pass. Id. The question of whether a roadway is a public highway is a question of fact. *Ventres* v. *Farmington,* 192 Conn. 663, 666–67, 473 A.2d 1216 (1984).

On the basis of Potter's testimony, the jury could have reasonably found that Route 1, at the area in question, was a four lane divided highway used by the defendant to travel from a cafe to his house. Further, it was reasonable to conclude, on the basis of the evidence adduced at trial, that this roadway was lined with business establishments, had traffic control signs, stop signals and a posted speed limit, was regularly patrolled by town police and was maintained, at least on some occasions, by the state department of transportation. All of these facts justify an inference that Route 1 was not a private way, over which only a limited number of persons have a right to pass, but rather was open to public use. See *Wamphassuc Point Property Owners Assn.* v. *Public Utilities Commission,* 154 Conn. 674, 680, 228 A.2d 513 (1967). The trial court appropriately allowed the jury to determine the issue concerning a public highway, and the jury's determination is reasonable and supported by the facts proved.[6]

### III

### JUDGMENT OF ACQUITTAL

The defendant challenges the procedure by which the trial court reached its decision on the motion for judg-

---

[6] The defendant claims that the state relied on the testimony of a defense witness to establish that Route 1 is a public highway and, therefore, the state failed to prove this element as part of its case-in-chief. This claim is without merit. The testimony of Potter clearly presented enough evidence to allow the jury to reach the conclusion that Route 1 is indeed a public highway.

ment of acquittal. He claims that the court did not independently consider the evidence presented at trial on this motion and made improper factual determinations regarding the defendant's conduct before the stop. He asserts that the pretrial court, *Thompson, J.*, predicated its finding of reasonable and articulable suspicion on a belief that Potter had observed a motor vehicle "violation" and that Potter's trial testimony revealed that no violation had occurred when the officer decided to conduct the investigative stop. The record does not support this claim.

The trial court considered Potter's testimony of the events at the pretrial and trial stages and did not find the differences to be so extreme as to require a different conclusion on the issue of reasonable and articulable suspicion.[7] Furthermore, the trial court's determina-

---

[7] At the pretrial motion before Judge Thompson, the following colloquy took place:

"Q. Okay. At some point you observed a violation, isn't that correct?
"A. Correct.

\* \* \*

"Q. Okay. At some point while following the vehicle you observed a violation, correct?
"A. Correct.

\* \* \*

"Mr. Scarpelino: I'm going to object to the use of the word, violation. This officer never said that this person violated anything. He said he swayed. So if counsel would not misstate the evidence.
"The Court: The objection is overruled. He did characterize it as a motor vehicle violation, did you not, officer.
"The Witness: Yes.
"The Court: Go ahead."

At trial, the following testimony was adduced:

"Q. Now you stated that when you pulled over the defendant's vehicle, you pulled it over, it hadn't committed any violations isn't that correct?
"A. That's correct."

The trial court, when considering, inter alia, the defendant's motion for judgment of acquittal, stated:

"The Court: Judge Thompson ruled on that first issue and he denied the defendant's motion at that time.

tion that there was sufficient evidence to support a finding that the defendant was weaving within the lane was not, as the defendant claims, clearly erroneous, as the standard demands. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts." (Citations omitted; internal quotation marks omitted.) *State* v. *Oquendo,* 223 Conn. 635, 645, 613 A.2d 1300 (1992); *State* v. *Torres,* 197 Conn. 620, 625, 500 A.2d 1299 (1985). There was sufficient evidence to support a finding that the defendant was weaving in his lane.

## IV

### THE DEFENDANT'S STATEMENT

Before trial, the defendant filed a motion in limine, seeking to prohibit the state from introducing any evidence of his refusal to consent to a chemical alcohol test. The defendant claimed that a department of motor vehicles hearing officer previously determined that there was insufficient evidence of refusal by the defendant and thus the results were inadmissible and further that the results of the tests were irrelevant to the crime charged. The trial court granted the defendant's pretrial motion, ruling that the state should not be able to reap a benefit in the form of a jury instruction from

---

"Mr. Silver: Yes.

"The Court: The argument is that there was different evidence presented to the trial court.

"Mr. Silver: He—I—

"The Court: Let me just make—

"Mr. Silver: Oh, I'm sorry, I thought you were asking—

"The Court: I'm just making a statement for the record. There was testimony [as to] weaving within the lane. Whether that is so extremely different from the testimony before Judge Thompson, the court doesn't feel that that is so as far as the factual—the weight of the evidence. The court has to give consideration to the jury's verdict. Your motions are denied."

the refusal when the hearing examiner had found that there was insufficient evidence of such a refusal.

During the state's case-in-chief, the trial court reconsidered the issue and indicated that although the court would not allow a jury instruction regarding inferences that could be drawn from the refusal, the court would permit Potter to refer to the refusal in his testimony.[8] The defendant claims that the effect of the trial court's changing its ruling and allowing the jury to hear the testimony compromised "the defendant's right to a fair trial and due process of law as guaranteed by the State and Federal Constitutions."

Although the defendant asserts that his rights under both the state and federal constitutions were transgressed, he does not provide an analysis of his claim. Both this court and our Supreme Court have declined

[8] The defendant was granted an administrative hearing pursuant to General Statutes § 14-227b. At that hearing, the hearing officer determined that there was insufficient evidence to conclude that the defendant had refused to submit to the chemical test. On the basis of that determination, the trial court stated, in the motion in limine, that "[f]or the court now to let the state put on evidence of a refusal, when it's already been found there wasn't a refusal, seems to be contradictory and illogical." The trial court granted the defendant's motion to prohibit the state from introducing any evidence of a refusal by the defendant to submit to the chemical test.

During trial, the state attempted to introduce the testimony of Potter regarding the defendant's statements at the police station. The defendant objected on the basis of the previous motion in limine. The trial court stated that it "feels that what we're dealing with here is that the refusal, the motion [in limine] the court granted had to do with the statutory refusal which triggers suspension, which triggers a special instruction that benefits the state as far as the jury being able to take an inference from that refusal. That still stands. What we are dealing with is, the court feels it's the state's right to have some testimony regarding what happened at the station and let the jury just evaluate that in the context of everything else that the officer's going to testify to."

The defendant again objected and the trial court stated that it was "drawing a distinction between the statutory refusal and the question which merely addresses what occurred." This ruling is consistent with our recent decision in *State* v. *Barlow*, 30 Conn. App. 36, 618 A.2d 579 (1992).

to review constitutional claims, deeming them to have been abandoned, when the defendant has not briefed and analyzed the claim. *State* v. *Tweedy,* 219 Conn. 489, 510 n.17, 594 A.2d 906 (1991); *State* v. *Johnson,* supra. That declination does not mean we are not able to review such a claim if we choose to do so. *State* v. *Hoeplinger,* 27 Conn. App. 643, 652 n.2, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992). We choose not to review this claim.

## V

### THE STATE'S SUMMATION

The defendant next claims that the state, during its closing statement, made two comments referring to facts not in evidence.[9] Following each comment, the

---

[9] The following exchange took place during the state's closing argument:

"Mr. Corradino: And who is on trial here? Kevin Potter is not on trial here. Jeffrey Harrison is on trial. He's the defendant. Not Officer Potter. And all the dead, lifeless scraps of paper that are going to go into the jury room with you. Smoke. And you do have the officers report. You don't have all of it. That's what you have. Take a look at that.

"Mr. Silver: I would object to that. He's asking the jury to draw an inference from facts not admitted to evidence.

"The Court: Sustained.

"Mr. Corradino: Exception please.

"Mr. Silver: I would ask Your Honor to instruct the jury that drawing such an inference is improper.

"The Court: The jury is so instructed. It's not in evidence. And you are to consider what is in evidence. Not what is not in evidence.

\* \* \*

"Mr. Corradino: We also heard that it's inconsistent that the officer would write that I saw the vehicle exiting the Lake Side Cafe. Well he testified right from that stand that the car when he saw it from his vantage point at the end of Houseley Road was accelerating. Just west of the Lake Side Cafe. How long continuing his exiting. Isn't it logical inference that a police officer would make when writing up his report after the fact. It's not a fatal flaw or inconsistency. The officer didn't write on that particular piece of paper that the alphabet test was administered. He testified that the alphabet test was administered. And he testified that it's in another report.

"Mr. Silver: I'm going to object to that, Your Honor. Again, he's making references to things that are not in front of the jury.

defendant's objection was sustained, the remarks were ordered stricken, and a curative instruction was given by the court charging the jury not to consider anything not in evidence nor draw any inference from any facts not in evidence. The defendant made no further objections. He claims that these statements deprived him of his rights under the state and federal constitutions to a fair trial and due process of law. Again, the defendant furnishes this court with no analysis in his brief other than his bare assertion. We decline to review his claim.[10]

## VI

### SUFFICIENCY OF THE EVIDENCE

The defendant argues that the evidence adduced at trial was insufficient to sustain a conviction for operating a vehicle under the influence of liquor. We disagree.

"Appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task: We must first review the evidence construing it in the light most favorable to sustaining the trial court's verdict . . . . We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that

---

"Mr. Corradino: That is in evidence, Your Honor, because—because that it is.

"The Court: Sorry, that comment is stricken.

"Mr. Silver: And would Your Honor please once again instruct the jury that they are to draw nothing, no inference whatsoever from any comments from things not in evidence.

"The Court: Again, an item that is not in evidence you're not to draw any inferences. Deal with what you recall being testified to."

[10] In addition, the defendant did not object to the adequacy of the curative instructions and did not raise the issue again at trial. On appeal, he does not claim review under State v. Golding, 213 Conn. 233, 567 A.2d 823 (1989). Even if appropriately claimed, we would not review this issue. State v. Montgomery, 22 Conn. App. 340, 346, 578 A.2d 130 (1990).

the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Avis,* 209 Conn. 290, 309, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989).

Construing the evidence in the light most favorable to sustaining the trial court's judgment, we conclude that the jury reasonably found that the defendant was guilty beyond a reasonable doubt. The evidence reasonably supported a finding that the defendant operated a motor vehicle on a public highway while under the influence of intoxicating liquor or drugs or both. See General Statutes § 14-227a (a) (1).

The judgment is affirmed.

In this opinion the other judges concurred.