[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, Peter Duncan, appeals from a decision of the Commissioner of Motor Vehicles upholding a suspension of Plaintiff's driver's license under General Statutes 14-227b
("the implied consent law") for refusal to submit to a chemical alcohol test. The Commissioner found as follows on the four elements of proof necessary for a license suspension under the implied consent law: (1) the police had probable cause to arrest plaintiff for a violation of C.G.S. 14-227a; (2) the police placed plaintiff under arrest; (3) plaintiff refused to submit to a chemical alcohol test; and (4) plaintiff was operating the motor vehicle that the police stopped. Plaintiff names as defendants Louis Goldberg, Commissioner of Motor Vehicles, and the Department of Motor Vehicles itself (collectively referred to as "the Commissioner").
On appeal, plaintiff asserts that the decision should be reversed because the Commissioner erred in finding that the first two elements of proof were satisfied. The Commissioner argues that there was no error and that the court should deny the appeal.
The principal issue in this case is whether a local police officer is authorized to pursue a person outside the geographical boundaries of the town for which he is a police officer for the sole purpose of stopping that person for an infraction committed in the police officer's said town. CT Page 5900
The facts concerning this issue are basically not in dispute. On September 5, 1991, in the early morning, Farmington Police Officer Gigliotti observed plaintiff operating a motor vehicle in the Town of Farmington near the Avon town line at what the officer considered excessive speed, he initiated pursuit of the plaintiff's car and continued pursuit approximately one mile into the Town of Avon where he stopped the plaintiff. Prior to stopping the plaintiff, the officer had no reason to believe the plaintiff was under the influence of alcohol and was pursuing the plaintiff solely for the purpose of issuing an infraction complaint. See A-44 report of Officer Gigliotti (ROR #105). After plaintiff was stopped, the officer noted the plaintiff's appearance and speech and a possible odor of alcohol, on which basis he administered field sobriety tests. Plaintiff failed these tests, according to the officer, and the officer then arrested him for operating under the influence of alcohol ("DUI") in violation of CGS 14-227a and issued him an infraction for speeding in violation of CGS 14-219(c).
Following the arrest, the police requested that plaintiff take a chemical alcohol test. (ROR #105, Form A-44). Plaintiff refused to submit to the test, and the Department of Motor Vehicles sought to suspend plaintiff's driver's license. (ROR #105, Notice of Suspension). Plaintiff requsted [requested] an administrative hearing in accordance with CGS 14-227b(f). At that hearing, the hearing officer found that (1) the police had probable cause to arrest plaintiff for DUI; (2) the police, in fact, arrested plaintiff; (3) plaintiff refused a chemical alcohol test; and (4) plaintiff was operating the motor vehicle. (ROR #105, Decision). Based on those findings, the Commissioner suspended plaintiff's driver's license for six months. (ROR #105, Decision).
The court finds that the Commissioner's decision adversely affected a specific personal and legal interest of the plaintiff, his right to operate a motor vehicle, and concludes, therefore, that he is aggrieved by that decision within the meaning of CGS 4-183(a).
In this appeal plaintiff argues that the initial stop of his car, as well as his subsequent arrests for DUI and the infraction were illegal because municipal police are not authorized to follow a car across a town border based merely upon a speeding infraction. As a result, plaintiff argues that CT Page 5901 the Commissioner erred by finding that the first two elements of the test in section 14-227b(f) were satisfied.
The authority of local police to make warrantless arrests within and without their jurisdiction is set forth in General Statutes 54-1f. (See State v. Kuskowski, 200 Conn. 82,510 A.2d 172 (1986)). That statute provides:
 "(a) [Municipal police officers], in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others. . . .
 (b) Members . . . of any local police department . . . shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony.
 (c) Members of any local police department . . . when in immediate pursuit of one who may be arrested under the provisions of this section, are authorized to pursue the offender outside of their respective precincts into any part of the state in order to effect the arrest. . . ." (emphasis added).
Section 54-1f(c) authorizes municipal police to pursue a perpetrator across a town boundary only if that person has committed an "offense" or a "felony." Clearly, neither the charges nor alleged violations are felonies. Accordingly, the issue is the definition of the word "offense" in CGS 54-1f; and this issue will be dispositive of this case.
Plaintiff asserts that the court should interpret the term "offense" according to the definition provided in General Statutes 53a-24:
 "(a) The term "offense" means any crime or violation which constitutes a breach of any law of this state or any other state, federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction." Emphasis added.
CT Page 5902
The Commissioner asserts that the court should interpret the term according to the definition provided in section 1021 of the Practice Book:
 "(5) "Offense" means any crime or violation which constitutes a breach of any law of this state or any local law or ordinance of a political subdivision of this state, for which a sentence of a term of imprisonment or a fine, or both, may be imposed, including infractions and traffic offenses." Emphasis added.
The definition of "offense" contained in General Statutes53a-24 is the definition applicable in this case and to the statutes of this state generally. General Statutes 53a-2
provides that "[t]he provisions of this title shall apply to any offense defined in this title or the general statutes, unless the context otherwise requires. . . ." Emphasis added.
CGS 53a-2 makes the definition of "offense" in CGS 53a-24
applicable to CGS 54-1f; and, thereby, excludes an infraction from the definition of "offense" in CGS 54-1f.
As for the Commissioner's argument that 1021(5) of the Connecticut Practice Book should be used to interpret CGS54-1f, this argument must fail in light of the specific provisions of CGS 53a-2 and CGS 53a-24 which statutory provisions must and do prevail over CPB 1021(5). This conclusion is further supported by the rulings in State v. Kluttz, 9 Conn. App. 686 (1987); also, by the decision in Lawlor v. Goldberg, 8 CSCR 152, December 21, 1992, Maloney, J.
Defendants' reliance on State v. Harrison, 30 Conn. App. 108
(1993) is misplaced and not applicable to the facts of this case. Harrison, supra, did not involve a pursuit because of an alleged infraction, and in Harrison, supra, the officer had reasonable suspicion within his jurisdiction to believe the defendant was operating a motor vehicle under the influence of alcohol or drugs whereas here he did not have any such suspicion until he stopped the defendant outside of his jurisdiction.
The court concludes that an infraction is not an "offense" under CGS 54-1f, and that, therefore, Officer Gigliotti was not authorized to pursue the plaintiff in order to stop and arrest CT Page 5903 him in the Town of Avon for the commission of an infraction.
The requirement in CGS 14-227b(f) that the police have probable cause to arrest the plaintiff for violation of CGS14-227a requires that the initial stop of the driver (plaintiff) be lawful. Since the court has found that the officer was not authorized to pursue and stop the plaintiff as aforesaid, said stop was unlawful and, therefore, the finding of probable cause by the Commissioner was erroneous based upon the record and the law.
Further, the requirement in CGS 14-227b(f) that the plaintiff be found to have been "placed under arrest" means that the arrest must have been a lawful arrest. Emphasis added. State v. Scully, 195 Conn. 668, 674-678 (1985); Field v. Goldberg, 42 Conn. Sup. 306, 317 (1991). An unlawful stop of a suspect by the police invalidates his subsequent arrest. State v. Scully, supra.
Since the court finds that the evidence in the record reveals that the arrest as well as the stop of the plaintiff were unlawful, the court concludes that the Commissioner's finding that the plaintiff was "placed under arrest" was erroneous.
The Commissioner's decisions on the issues of probable cause and arrest as aforesaid were clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, and said decisions and/or findings prejudiced substantial rights of the plaintiff in that they resulted in the suspension of his driver's license (right to operate a motor vehicle in the State of Connecticut).
In accordance with CGS 4-183(j), the plaintiff's appeal is sustained, and the defendants are hereby ordered to restore his driver's license (right to operate a motor vehicle in the State of Connecticut).
Rittenband, J.