[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed May 20, 1997
The defendant moves for a suppression of the results CT Page 4896 of the breathalyzer tests taken on July 26, 1996. The defendant was arrested on July 26, 1996, and charged with violating General Statutes § 14-227a, operating a motor vehicle while under the influence of alcohol, along with other violations. The defendant argues that there was no probable cause to stop the defendant's motor vehicle.
For purposes of this motion, the parties stipulate to the facts set forth in the Wallingford Police Department incident report. Those facts pertinent to this motion are as follows. On July 26, 1996 at approximately 12:55 a.m., Patrolman DeMaio was driving his cruiser in the parking lot for the Wallingford Police Station. He noticed the defendant's vehicle "driving the wrong way, west bound," in the lot. He saw it back into the police department's gas fueling area. Patrolman DeMaio took no action but drove out of the lot to go on patrol, "knowing that we had some of Wallingford's Detective Bureau working at the time, and that they do on occasion use undercover/unmarked vehicles." At approximately 1 a.m., the Wallingford Police Department dispatch observed the defendant's vehicle on the security cameras and radioed Patrolman DeMaio to "check out the vehicle." The defendant's vehicle was known to the dispatch not to be a Bureau car. Patrolman DeMaio saw the defendant's vehicle pull out of the lot onto North Main Street, and turn onto Academy Street. The patrolman began to follow the vehicle and called in the marker plate. Patrolman DeMaio was then asked by Sergeant Baxter to find out what the defendant's vehicle had been doing in the Police Department lot. The report notes parenthetically that the Department had been experiencing problems with vandalism to employee vehicles while parked in the lot. Once the defendant's vehicle turned from Academy Street to North Elm Street, Patrolman DeMaio stopped the vehicle.
The defendant claims, and the court agrees, that the patrolman improperly stopped the defendant's vehicle.
"Under the fourth amendment to the United States constitution, and under article first, § 7 and article first, § 9, of the Connecticut constitution, a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968); State v. Oquendo, 223 Conn. 635, 654,613 A.2d 1300 (1992); State v. Lamme, 216 Conn. 172, 184,579 A.2d 484 (1990)." State v. Trine, 236 Conn. 216, 223 (1996). "[T]he police officer must be able to point to specific and articulable facts CT Page 4897 which, taken together with rational inferences from those facts, reasonably warrant that [stop] Terry v. Ohio, 392 U.S. 1. 21,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." State v. Groomes, 232 Conn. 455,468 (1995).
The state argues that those facts are found in the report's reference to the defendant's driving the wrong way in the lot and problems of vandalism to employee vehicles. The state cites the Appellate Court decision of State v. Harrison, 30 Conn. App. 108 (1993) which also involved an arrest under § 14-227a. There, the police officer saw the defendant's car in the parking lot of a bar with a signal light turned on. He then observed the same car weaving in its lane. "Putting these facts together, under the totality of circumstances, the officer had an objective basis to suspect the defendant may have been operating a motor vehicle under the influence of liquor or drugs or both." 30 Conn. App. at 113. That is not the case here. There was no erratic driving, traffic violations or unusual conduct to conclude "that criminal activity may be afoot."30 Conn. App. at 114. The only noteworthy behavior observed by Patrolman DeMaio was the defendant driving the wrong way in the parkinglot, and he concluded that behavior did not warrant an investigatory stop. There is no suggestion that the defendant trespassed or that any vandalism took place while he was on the lot. Significantly, the stop took place after the defendant had left the lot and was driving unremarkably along the city streets. In light of these facts, the court cannot conclude that Patrolman DeMaio had "a particularized and objective basis for suspecting the [defendant] of criminal activity."30 Conn. App. at 113.
This case is also distinguishable from State v. Demers,
3 Conn. Ops. 218 (1997), where Judge O'Keefe granted a motion to suppress but found the initial investigatory stop proper. There the defendant's vehicle had been seen circling a children's playground for two weeks. As Judge O'Keefe noted, "[t]he police and the public are legitimately concerned about suspicious activities in the vicinity of these areas and the power of the police to lawfully investigate these situations should be broad." (p. 219). Here there are no such suspicious activities regarding legitimate public concerns.
In determining the constitutional validity of an investigatory stop, both the United States Supreme Court and our Supreme Court require a balancing of the nature of the intrusion upon personal security against the importance of the government interest inducing that intrusion. United States v. Hensley, 469 U.S. 221, CT Page 4898105 S.Ct. 675, 83 L.Ed.2d 604 (1985); State v. Mitchell,204 Conn. 187, 527 A.2d 1168, cert. denied, 484 U.S. 927,108 S.Ct. 293, 98 L.Ed.2d 252 (1987). In this case the balancing results in a finding that the investigatory stop was invalid under our state and federal constitutions.
The Motion to Suppress is granted.
DiPentima, J.