[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 5017
On February 6, 1998, at approximately 1:15 a.m., the defendant Anglovich was traveling East on Route 4 in Goshen. Connecticut. Sergeant Thomas Serra, riding directly behind him in a marked police cruiser, observed Anglovich activate his right turn signal and turn right into the driveway of the Torrington County Club, a privately owned golf course and facility. Because of the hour, the fact the club was closed, and because the facility was set back out of sight from the roadway, Sgt. Serra decided to follow him. He saw the defendant drive up the length of the driveway (which he described as approximately two tenths of a mile) and, once at the top, turn one hundred eighty degrees (180°), and move as if he were going to head back down the driveway. Serra then "hollered" to Anglovich and signaled him to stop. The defendant did so and Serra got out of his cruiser and talked to the driver. It was then the officer noted Anglovich appeared disheveled, had an odor of alcohol about him, and had difficulty producing his license and registration. Suspecting he was dealing with an intoxicated driver, Serra radioed for backup and Trooper James Bonetti had Anglovich perform field sobriety tests which Bonetti concluded the operator had failed. He arrested him for a violation of C.G.S. § 14-227a, operating while under the influence of alcohol or drugs or both.
At Troop L, Bonetti asked the defendant to submit to a breath test for chemical and of his blood alcohol level. Though the defendant blew into the machine, a blood alcohol level was not obtained as the machine indicated the simulator value was not in range. This test result was not given the defendant. Anglovich again blew into the machine and the intoximeter indicated the blood alcohol level was .214. He was given a copy of this result. Bonetti requested the defendant blow into the machine a third time but he refused. The defendant was given a copy of a slip indicating his refusal to continue the process.
On April 1, 1998, the defendant filed a Motion to Suppress: 1) all evidence obtained incident to his arrest because the initial stop was illegal; 2) the breath tests because Trooper Bonetti failed to comply with C.G.S. § 14-227a(c)(2) by not providing him a copy of the first test attempt for which the machine did not produce a result; 3) the fact of the defendants refusal to blow into the machine a third time because C.G.S. § 14-227a(c) contemplated the performance of two (2) tests CT Page 5018 only; and 4) all statements made by Anglovich because the defendant had not been mirandized.[1] At hearings held on June 3, 1998, and September 2, 1998, Trooper Bonetti and Sgt. Serra testified.
The defendant claims Sgt. Serra had no reasonable and articulable suspicion a crime had been committed or was about to be committed when he was stopped. The state claims the initial contact was consensual, or, alternatively, the officer had a reasonable and articulable suspicion to justify the stop. Specifically, the state points to the fact the hour was late, the business was closed, the facility was set back from the road and not visible to passing motorists, and that Anglovich was "drifting to the left and to the right" on the driveway leading to the business parking area.
The fourth amendment to the federal constitution, made applicable to the states through the due process clause of thefourteenth amendment, provides in relevant part the right of people to be secure in their persons and effects against unreasonable searches and seizures shall not be violated. State v. Wilkins,240 Conn. 489, 495 (1997); State v. Floyd, 217 Conn. 73, 79-80 (1991). Evidence which is the product of an illegal seizure or detention of a person is subject to suppression. State v. James,237 Conn. 390, 404 (1996), citing State v. Greenfield, 228 Conn. 62, 67
(1993); Brown v. Illinois, 422 U.S. 590 (1975); Wong Sun v.United States, 371 U.S. 471 (1963). In determining the threshold question whether there has been a seizure, examination of the police conduct at the time of the alleged seizure requires application of an objective standard. State v. James, supra. Under our state constitution, a person is seized only if, in view of all other surrounding circumstances, a reasonable person would have believed he was not free to leave. Id., citing State v.Oquendo, 223 Conn. 635, 647 (1992); United States v. Mendenhall,446 U.S. 544, 553-54, reh. denied, 448 U.S. 908 (1980). Under the federal constitution, a seizure occurs only if there is a show of "physical force, or . . . submission to the assertion of authority." State v. James, supra, at 404-405, citing Californiav. Hodari, 449 U.S. 621, 626 (1991).
A seizure does not, however, occur when an individual fully chooses to enter into or continue an encounter with police and there is no constitutional prohibition preventing police officers from approaching a person or inquiring whether he is willing to CT Page 5019 answer questions or to asking someone questions if that person is willing to listen. Op. cit at 405. See also State v. Brown,199 Conn. 47, 52-53 (1986); State v. Damon, 214 Conn. 146, 153-5
4 (1986). Factors to be considered in determining the consensual nature of a particular encounter are the time, place, and purpose of the contact as well as the officer's words, tone of voice, and general demeanor. Also to be considered are the officers statements to others present, his responses to questions posed by the defendant, and whether the officer has expressed an intention to detain the accused. State v. James, supra, at 405.
The court is unpersuaded by the state's suggestion the initial stop was in fact a consensual encounter. The facts clearly indicate the defendant, once having reached the top of the driveway and having entered the public parking area, turned his truck completely around and continued to drive slowly as if intending to travel back down the driveway when Sgt. Serra both
hollered out to him and signaled him to stop. A reasonable person in the defendants position would then have concluded he was not free to leave without running the risk of a police chase and/or a criminal charges. When asked if the defendant were free to leave when he yelled out to him and signaled him, the officers response was, "It was investigative detention." (Tr. 9/2/98, p. 54) In fact, Serra testified that, had the defendant not stopped, he (Serra) "probably "would have pursued him for disobeying an officers signal. (Tr. 9/2/98, p. 53) This was the stop of a motor vehicle pursuant to a show of authority and detention of the defendant and, thus, a seizure within the meaning of our state and federal constitutions. In determining the constitutional validity of an investigatory stop and detention, both the United States Supreme Court and the Connecticut Supreme Court require a balancing of the nature of the intrusion upon personal security against the importance of the governmental interest inducing that intrusion. State v. Harrison, 30 Conn. App. 108, 111-12 (1993) (citations omitted). That court noted that, to justify the intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. Id. at 112, citing Terry v. Ohio, 392 U.S. 1, 21 (1968); State v.Whitfield, 26 Conn. App. 103, 110 (1991); State v. Cofield,220 Conn. 38, 44 (1991). In evaluating the validity of such a stop, courts must consider whether, in light of the "totality of the circumstances — the whole picture, the police officer had a particularized and objective basis for suspecting the particular CT Page 5020 person stopped of criminal activity." Harrison, supra, at 112, citing United States v. Cortez, 449 U.S. 411, 417-18 (1981);State v. Mitchell, 204 Conn. 187, 195, cert. denied, 484 U.S. 927
(1987).
Was there then, in the mind of a reasonable person with the information available to and known by Sgt. Serra, a reasonable and articulable suspicion that a crime had been or was about to be committed? Serra had been following the defendant's truck on Route 4 for "not more than a mile." (Tr. 9/2/98, p. 50) For that distance, he observed no wrongdoing by the defendant. Anglovich was not speeding or driving erratically, was not weaving on the road, and he had used his right turn signal to indicate the right turn he took onto the driveway leading to the Torrington Country Club. (Tr. 9/2/98, p. 51) The state suggests the officer's observation the defendant was drifting to the left and to the right on the driveway constituted a reasonable and articulable suspicion. Yet, even when Anglovich drove into the driveway, the officer testified his main concern was not the defendants driving but his reason for being there. Significant perhaps is that, though privately owned, the club was a public facility. Driving onto the grounds is not in itself criminal nor does it rise to that level merely because the act occurs in the early morning hours when the business is closed. While Serra at one point testified he had it in his mind the club "could possibly be burglarized" (Tr. 9/2/98, p. 53), he later stated it did not appear to him as if the defendant were going to commit a burglary. (Tr. 9/2/98, p. 54) As our Supreme Court has stated, a police officer's decision to make an investigatory stop must be predicated on "more than a mere hunch." State v. Scully,195 Conn. 668, 674-75 (1985). In a footnote, the Scully court referenced Brown v. Texas, 443 U.S. 47 (1979) in which two officers' observations of one person not known to them but who looked suspicious and another person emerging from an ally in an area of town known for a high incidence of drug traffic did not constitute reasonable suspicion sufficient for a justifiable investigative stop. . . . "The lesson from Brown v. Texas, supra, is simply that physical presence in a geographical area where the police may have reason to anticipate possible violations of the law does not in and of itself justify arbitrary investigatory stops." Op. cit., at fn. 15, 678-79. The mere early morning presence of Anglovich in the driveway and/or parking area of a closed business in the absence of any evidence of prior burglaries either specifically involving this facility or any other business in the general vicinity and in the absence of any CT Page 5021 observed or otherwise reported unlawful activity by the defendant operator did not justify the stop of this vehicle. The officer's desire to know why Anglovich had turned into the County Club's property is insufficient to warrant the personal intrusion of the stop. While a reasonable and articulable suspicion may arise from conduct that alone is not criminal[2] and while crime prevention is a legitimate police function thus permitting officers to make brief stops of suspicious persons to determine their identity or to maintain the status quo while gathering further information, this case is readily distinguishable from those the state cites in its brief. In State v. Corbuzzi,161 Conn. 371 (1971), the police officer stopped a motorist he had observed for over fifteen (15) minutes in three (3) different locations within a commercial area normally deserted at that hour. He asked for and received the drivers license and registration and, when the defendant offered a plausible reason for being where he was, the officer did not detain him despite seeing in plain view on the floor of the back seat an open bag containing pennies, black gloves, and a pair of pliers. The officer then did a search of various business in the immediate area and found one had been burglarized and a cash register had been pried open. Shortly thereafter a second officer arrested the driver based upon the first officers knowledge a coin store in the area had been burglarized and that officers observations of the change, gloves, and pliers in the defendants vehicle. In State v. Harrison,30 Conn. App. 108 (1993), the officer observed the defendant driving in the parking lot of a bar with its signal light turned on and, several minutes later, observed the same car weaving in its lane.Id. at 113. The totality of the circumstances there provided an objective basis for the officers reasonable suspicion the driver may have been operating under the influence of alcohol or drugs or both. Id. In State v. Rodriguez, 239 Conn. 235 (1996), the officer who stopped the defendant knew a robbery had occurred at a home 2.4 miles away, knew the defendant matched the description of one of the robbers, and observed him to be walking away from the crime scene within a time frame that could have placed him at his present location after having already participated in the crime. Id. at 239-40. Also relevant is that, when the officer came upon the defendant, the defendant was in the roadway and waving his arms frantically in an effort to flag down passing vehicles, which behavior itself constituted a reasonable and articulable suspicion sufficient to conduct a brief, investigatory detention. Id. at 245. In State v. Aillon, the first stop occurred because the drivers car had a loud muffler and its rear marker plate was not illuminated. After a warning, CT Page 5022 the officer let the operator go. Shortly thereafter, the officer learned via a radio dispatch that the same driver he had first stopped was a suspect in a store burglary. Id. at 397. In the instant case, Sgt. Serra had no reason to suspect the defendant had committed or was about to commit any crime. Viewing the states evidence in the light proffered by its own witness, Anglovich was stopped for no reason other than to satisfy Serra's curiosity with regard to why Anglovich was where he was. (Tr. 9/2/98, p. 38)
In this case, there was nothing in the defendants actions at the time of or prior to the investigatory stop which constitutionally justified the police intrusion. Our state and federal constitutions afford individuals protection against certain exercises of official power and this record requires absolute loyalty to those constitutional safeguards.
All evidence obtained after the stop is suppressed. Given the courts finding on this issue, it is not necessary to address the second and third issues addressed in the defendants brief.
The motion is granted.
SHEEDY, J.